929 So.2d 267 (2006)
Sherry WATTERS, Frances M. Breyne, Gina Recasner, Gretchen Wiltz and Wendy Lemieux Individually and on Behalf of Others Similarly Situated
v.
DEPARTMENT OF SOCIAL SERVICES, Department of Health and Hospitals, Division of Administration, BG Real Estate Services, Inc., Baha Towers Limited Partnership, et al.
Kristen M. Rhodes, Donalisa Augustus-Jones, and Gerald J. Washington, Sr.
v.
BG Real Estate Services, Inc., Baha Towers Limited Partnership, Bahar Development, Inc., Noob I GP, LLC, Noob I, LP, Monticello Insurance Company, and Evanston Insurance Company.
Mary Johnson, Sharon Cheneau, Bernard Singleton, Valerie Eddington, Marion Van Buren, Mary Williams, Carolyn Reeves-Davis, Richard Eddington, Clara Reeves, et al.
v.
Department of Social Services, Division of Administration, BG Real Estate Services, Inc., Baha Towers Limited Partnership, Bahar Development, Inc., Noob I GP, LLC, Noob I LP, Monticello Insurance Company, Evanston Insurance Company, et al.
No. 2005-CA-0324 to 2005-CA-0326.
Court of Appeal of Louisiana, Fourth Circuit.
April 19, 2006.
Opinion Granting Rehearing May 22, 2006.
*270 Mickey P. Landry, Frank J. Swarr, Landry & Swarr, L.L.C., New Orleans, Robert G. Creely, The Creely Law Firm, L.L.C., Gretna, Craig Mitchell, Mitchell and Associates, New Orleans, Madro Bandaries, Madro Bandaries, P.L.C., Gretna, Counsel for Plaintiffs/Appellees.
Neil C. Abramson, Benjamin Ward, Phelps Dunbar LLP, New Orleans, Counsel for Specialty National Insurance Company.
Charles C. Foti, Jr., Attorney General, James J. Bolner, Jr., Special Assistant Attorney General, Berrigan Litchfield Schonekas Mann, Traina & Bolner, LLC, New Orleans, Counsel for State of Louisiana.
(Court composed of Judge TERRI F. LOVE, Judge MAX N. TOBIAS, Jr., Judge LEON A. CANNIZZARO, Jr.)
TERRI F. LOVE, Judge.
This appeal arises from the trial court's judgment granting plaintiffs' Motions for Certification as Class Actions in two consolidated cases. We affirm the trial court's class action certification. We remand for the trial court to determine whether there was a causal connection between the exposure to the toxic substance and injury sustained in the defining of the classes.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY
In September 1996, the Division of Administration ("DOA"), which is vested with the power to approve or disapprove leases entered into by the State of Louisiana ("State"), approved a lease executed with the Plaza Tower Office Building ("the Plaza Tower"), located at 1001 Howard Avenue, New Orleans, Louisiana, for the use of its building as office space for various State departments. The DOA, acting through the Director of Office of Facility Planning and Control, Roger Magendie, approved the Department of Social Services' ("DSS") request to cancel its lease with the owners of the Plaza Tower and in *271 February 2002, DSS vacated the building and terminated its lease citing as reasons for the termination that the building owners violated the fire code and asbestos regulations, and that the building had chronic water leaks, which permitted mold to grow in leased office space.

WATTERS PLAINTIFFS
Prior to DSS' request to terminate its lease with the Plaza Tower, plaintiffs, Sherry Watters, Frances M. Breyne, Gina Recasner, Gretchen Wiltz, and Wendy Lemieux (hereinafter collectively referred to as "Watters plaintiffs") filed a petition on October 25, 2001, seeking damages as a result of their exposure to mold, asbestos, and other toxins alleged to have been contained in the Plaza Tower. The Watters matter was filed on behalf of all State employees who were assigned to work in the Plaza Tower from September 23, 1996, until February of 2002.[1]

RHODES PLAINTIFFS
In November of 2001, plaintiffs, Kristen M. Rhodes, Donalisa Augustus-Jones, and Gerald J. Washington, Sr., individually and on behalf of others similarly situated, (hereinafter collectively referred to as "Rhodes plaintiffs") filed a petition for damages and recognition as a class action.[2] Plaintiffs, who included employees of the New Orleans District Attorney's Office of Child Support and Enforcement and the Orleans Parish Civil Sheriff's Office, alleged that they were housed in the Plaza Tower and exposed to mold, asbestos, and other toxins. As a result of those exposures, they sustained injuries.[3] The Rhodes matter was filed on behalf of employees of the New Orleans District Attorney's Office of Child Support Enforcement and the Orleans Parish Civil Sheriff's Office, who occupied the Plaza Tower, from September 1998, until April 2002.

JOHNSON PLAINTIFFS
In September of 2002, plaintiffs, Mary Johnson, Sharon Chenear, Bernard Singleton, Valerie Eddington, Marion Van Buren, Mary Williams, Carolyn Reeves-Davis, Richard Eddington, Clara Reeves, Diane Trim, and Francis Sowell (hereinafter collectively referred to as "Johnson plaintiffs") filed a petition for damages seeking class certification. The Johnson plaintiffs, contract foster parents for the DSS, assert that they suffered various illnesses as a result of water leaks, mold, and exposure to various conditions at the Plaza Tower building.[4] The Johnson case *272 was filed on behalf of all contract foster parents who occupied the Plaza Tower from 1995, until February 2002.

MOTION FOR CLASS ACTION CERTIFICATION
In April 2004, plaintiffs named Specialty National Insurance Company ("Specialty National"), alleged insurer of Baha Towers Limited Partnership, Bahar Development, Inc., and L & B Serbo Fun, DBA: Plaza Tower, as defendants in their claims of exposure. However, plaintiffs' claims against the owners and operators of the Plaza Tower, and the owners' and operators' insurers reached a preliminary settlement agreement, but not with Specialty National. Accordingly, the plaintiffs severed and stayed all claims against the owners and operators of the Plaza Tower and their insurers that provided policy coverage from 1997 until 2001. The Motions for Certification as Class Actions proceeded against the State and Specialty National.
The trial court granted plaintiffs' Motions for Certification as Class Actions pursuant to La. C.C.P. art. 591, specifically, pursuant to La. C.C.P. art. 591(B)(1). In the trial court's judgment, the trial court certified and defined the class involving the Watters plaintiffs, as all present or past individuals employed by the State who worked in Plaza Tower at any time from 1996, to present, who have been exposed to toxic substances and all individuals assigned after the day of filing of the petition. The trial court also appointed named plaintiffs and individuals Sherry Watters, Frances M. Breyne, Gina Recasner, Gretchen Wiltz, and Wendy Lemieux, as Class Representatives in the Watters matter.
The trial court's judgment also certified and defined the class involving the Johnson plaintiffs as all present or past "contract foster-parents" of the DSS who were required by the terms of their contractual duties to occupy the Plaza Tower from 1995, to the date of their departure from the Plaza Tower, who were exposed to fungal substances such as mold and mold spores which were growing on building materials and the by-product of the mold and mold spores that were released into the air. The trial court also appointed named plaintiffs and individuals Mary Johnson, Sharon Chenear, Bernard Singleton, Valerie Eddington, Marion Van Buren, Mary Williams, Carolyn Reeves-Davis, Richard Eddington, Clara Reeves, Diane Trim, and Frances Sowell, as Class Representatives in the Johnson matter.
It is from the trial court judgment in favor of the Watters plaintiffs' and the Johnson plaintiffs' Motions for Certification as Class Actions and against defendants, the State, through DHH, DSS, as well as Specialty National for the years covered by their policy that Security National and the State appeal.
Specialty National and the State appeal the trial court's judgment certifying as class actions the Watters and Johnson matters.[5] Specialty National perfected a suspensive appeal, asserting that the trial court's judgment was properly appealable *273 as an interlocutory judgment, which causes irreparable injury.
Specialty National avers that the trial court erred in certifying the actions as class actions, stating that the plaintiffs failed to prove the presence of mold during Specialty National's policy period, which was for the first six months plaintiffs worked in or visited the building. Specialty National also asserts that the trial court erred in certifying the class pursuant to La. C.C.P. art. 591(B)(1) and that the absence of an existing single common exposure and individual issues of causation predominate.
The State asserts that the trial court was manifestly erroneous in certifying these two cases as class actions. In its specifications of error, the State asserts that the trial court was manifestly erroneous in finding that the plaintiffs presented common issues of law and fact, in finding that the Johnson plaintiffs met the numerosity requirement, and in finding that the class representatives satisfied the requisite typicality and adequacy standards. The State also asserts that the trial court erred in failing to require the plaintiffs to establish numerosity and that the class definition is vague.

STANDARD OF REVIEW
The issue before this Court is not the merits of the ensuing claims, but rather whether the trial court erred in granting plaintiffs' motions for certification as class actions. The standard of review for certification of class actions is bifurcated. The factual findings are reviewed under the manifest error/clearly wrong standard; the trial court's discretionary judgment on whether to certify the class or not is reviewed by the abuse of discretion standard. Boudreaux v. State, Dep't of Transp. and Dev., 96-0137, p.5 (La.App. 1 Cir. 2/14/97), 690 So.2d 114, 119. Accordingly, the standard of review in the case sub judice is whether the trial court abused its discretion in certifying the plaintiffs' claims as class actions, and whether the trial court was manifestly erroneous in its factual finding that the evidence submitted was sufficient to satisfy the requisite elements of adequacy of representation, commonality, and numerosity for class certification.
The bifurcated test for the appellate review of factual findings is: 1) whether there is a reasonable factual basis in the record for the finding of the trial court, and 2) whether the record establishes that the finding is not manifestly erroneous. Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). An appellate court may not set aside a trial court's factual finding unless, after reviewing the record in its entirety, it determines the trial court's finding was clearly wrong. Stobart v. State, Through Dept. of Transp. and Dev., 617 So.2d 880, 882 (La.1993). The judgment certifying the class in this consolidated action is appealable. Davis v. Am. Home Prods. Corp., 02-0942, p. 4 (La.App. 4 Cir. 3/26/03), 844 So.2d 242, 248, citing Eastin v. Entergy Corp., 97-1094 (La.App. 5 Cir. 4/15/98), 710 So.2d 835.

FACTUAL FINDINGS
Specialty National avers that the trial court erred in certifying the actions as class actions, averring that the plaintiffs failed to prove the presence of mold during Specialty National's policy period. At a hearing on class certification, the only issue to be considered by the court is whether the case is one in which the class action procedural device is appropriate. Munsey v. Cox Communications of New Orleans, Inc., 01-0548, p. 5 (La.App. 4 Cir. 3/20/02), 814 So.2d 633, 636, citing Andry v. Murphy Oil, U.S.A., Co., 97-0793 (La.App. 4 Cir. 4/1/98), 710 So.2d 1126, 1129. Thus, *274 "the court is not concerned with whether the plaintiffs have stated a cause of action or the likelihood that they ultimately will prevail on the merits." Munsey, p. 5, 814 So.2d at 636, quoting Andry, 97-0793, p. 3, 710 So.2d at 1129 and Miller v. Mackey Int'l, Inc., 452 F.2d 424 (5th Cir.1971).
In its reasons for judgment, the trial court in the case sub judice opined:
The problems began as soon as employees began occupying the building. Within weeks water pipes burst and people were ankle deep in water. Letters and memos were circulated questioning why employees were sick with nose burning, breathing difficulties and upper respiratory problems. Numerous complaints were made to the building managers and to state supervisory personnel complaining about water leaks, ceiling leaks, dampness and buckling and wet ceiling tiles. In a letter report of October 12, 2001, Mr. Kenneth Lanier further observed a water soaked building with visible mold growth, uncleaned air conditioning coils and air quality in floors 17 and 27 that is known to produce potent mycotoxims [sic] and mold spores. These are the floors visited on a regular basis by the class comprising the plaintiffs in the Mary Johnson et. al. vs. Department of Social Services et. al. lawsuit.
The State entered into a lease with the Plaza Tower on September 23, 1996, during which, Specialty National provided a commercial general liability policy to Plaza Tower. Specialty National did not cancel its insurance coverage of the Plaza Tower until March 15, 1997. Plaintiffs assert that they were exposed to toxic substances and fungal substances such as mold and mold spores, which were growing on the building material, and the by-product of the mold and mold spores that were released into the air. Specialty National avers that the record is absent of evidence that mold existed or that the plaintiffs were exposed to mold during the period Specialty National provided commercial general liability coverage to Plaza Tower.
The State called Dr. Bruce Kelman to testify at the certification hearing. Dr. Kelman, an expert in the filed of toxicology, testified that there was not enough mold spores to cause the reported illness claimed by the five class representatives. He further testified as to the spore count made in 2001; however, the defendants compromised a scheduled examination prior to 2001, because they placed bleach and other cleaning products into the duct work at the Plaza Tower and began to clean up. Thus, the 2001 spore count was collected subsequent to the implementation of the bleach and clean-up procedures.
Dr. Kelman specifically testified that he did not believe there was sufficient mold spores present in the Plaza Tower to sustain plaintiffs' claims of illness as a result of exposure to mold, etc., in the workplace. However, Dr. Kelman also testified that mold in an indoor environment should be cleaned because it is bad and that water damage in a building can indicate mold growth.
Further, Dr. David C. Straus, plaintiffs' expert, testified that if water intrusion exists and the building material stays wet for more than seventy-two hours, then he would recommend that it be disposed of, as mold has already begun to grow on the item that has retained the water. Dr. Chin S. Yang testified that if water damage exists, it is more likely than not that mold spores would be produced.
It is evidenced in the record that the employees housed in the Plaza Tower since September 23, 1996, were exposed to unremitting water damage from the time the State of Louisiana employees began to occupy office space in the Plaza Tower from *275 September 23, 1996, until they vacated the building in September of 2001. Shirley Dean, Program Specialist for DHH, Bureau of Health Services Financing, New Orleans Regional Office, forwarded a letter to the Plaza Tower in February of 1997, complaining of the continuing rainwater seepage problems with her office. She further informed the Plaza Tower of the mildew growing on the walls as a result of the water damage, and despite her personal efforts to kill the mildew, the smell of mildew was extremely strong. She further informed the Plaza Tower that the presence of mildew had caused her respiratory problems among other concerns.
After careful review of the record before us, we do not find that the trial court was manifestly erroneous in certifying plaintiffs' claims as class actions against Specialty National.

CLASS CERTIFICATION
Specialty National further asserts that the trial court erred in certifying the Class pursuant to La. C.C.P. art. 591(B)(1) and that there is an absence of a single common exposure; therefore, individual issues of causation predominate. The State also asserts that the trial court was manifestly erroneous in finding that the Johnson plaintiffs met the numerosity requirement; in finding that the plaintiffs presented common issues of law and fact; in finding that the class representatives satisfy the requisite typicality and adequacy standards; and that the trial court erred in failing to require the plaintiffs to establish numerosity.
Louisiana Code of Civil Procedure articles 591 et seq., governs the class action procedure. La. C.C.P. art. 591(A) provides in pertinent part:
One or more members of a class may sue or be sued as representative parties on behalf of all, only if:
(1) The class is so numerous that joinder of all members is impracticable.
(2) There are questions of law or fact common to the class.
(3) The claims or defenses of the representative parties are typical of the claims or defenses of the class.
(4) The representative parties will fairly and adequately protect the interests of the class.
(5) The class is or may be defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for purposes of the conclusiveness of any judgment that may be rendered in the case.
The burden is placed on the party seeking class certification to demonstrate that all of the requisite elements for certification exist. Accordingly, the plaintiff must show that the class is definable and that it satisfies the requirements of numerosity, commonality, typicality, and adequacy of representation. Davis v. Jazz Casino Co., 03-0005, p. 4 (La.App. 4 Cir. 1/14/04), 864 So.2d 880, 886. In the trial court's judgment in the case sub judice, the trial court stated:
[A]lthough the requested elements for both Article 591(B)(1) and (B)(3) classes are satisfied, both the classes herein are certified and maintained pursuant to Article 591(B)(1).
La. C.C.P art. 591(B)(1) provides:
An action may be maintained as a class action only if all of the prerequisites of Paragraph A of this Article are satisfied, and in addition:
(1) The prosecution of separate actions by or against individual members of the class would create a risk of:
(a) Inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible *276 standards of conduct for the party opposing the class, or
(b) Adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests;
In its written reasons for judgment, the trial court stated:
[T]his Court has allowed all parties to do extensive discovery regarding class certification issues. The parties have conducted written discovery and Defendant deposed plaintiffs sought to be made class representatives. The court has reviewed the pleadings, memoranda, the written discovery and transcripts of the deposition testimony of the class representatives as well as the entire record of these proceeding [sic] all contained in four large boxes, and is satisfied that the elements provided for by Articles [sic] 591 of the Louisiana Code of Civil Procedure are clearly satisfied. The Court intends to maintain both class actions [sic] as pursuant to Article 591(B)(1).
With respect to Article 591(A), the court finds:
(1) The potential classes are numerous enough, there being many hundred [sic] of members of class.
(2) Common issues of facts and law exist, primarily the existence of mold, spores and microtoxins and their detrimental effect on class representatives. Also the lack of recognition and correction by State Offices.
(3) The named class representatives [sic] claims are typical of the classes. Those claims arise out of the same alleged conduct of Defendants and rely on the same legal theories.
(4) There has been presented no reason as to why the named class representative or proposed class counsel are inadequate to represent the class and none appear from the record.
(5) The class is objectively defined because it consists of an objectively identifiable group. With respect to Article 591(B)(1), the court finds:
As pointed out above, common issues of fact and law exist. There is evidence that absent certification of a class herein individual lawsuits will be brought. Certainly individuals prosecuting separated actions on their own behalf under the facts and law at issue could conceivably result in varying interpretations. Such differing results have the effect not only of establishing different standards of conduct with respect to Defendant's alleged actions, but will almost inevitable [sic] affect the interests of other class members and impede their ability to protect those interest [sic].

Numerosity
The defendants assert that the trial court erred as it pertains to the issue of numerosity. The first prerequisite, as enumerated in La. C.C.P. art. 591(A)(1), is that the members of the class be so numerous that joinder is impracticable. This requirement reflects the basic function of the class action as a device for allowing a small number of persons to protect or enforce rights or claims for the benefit of many where it would be inequitable and impracticable to join every person sharing an interest in the rights or claims at issue in the suit. Davis, 03-0005, p. 6, 864 So.2d at 887, citing Kent A. Lambert, Certification of Class Actions in Louisiana, 58 LA. L. REV. 1085 (1998). Certification of actions as class actions are generally appropriate whenever the interested parties appear to be so numerous that separate suits would unduly burden the courts, and a class action would be more useful and judicially *277 expedient than any other available procedures. Cotton v. Gaylord Container, 96-1958, 96-2029, and 96-2049, p.13 (La. App. 1 Cir. 3/27/97), 691 So.2d 760, 768. Determination of whether this requirement has been fulfilled depends on the facts and circumstances of each individual case. Id. However, the plaintiffs are not required to identify every member of the class prior to certification. Davis v. Am. Home Prods. Corp., 02-0942, 02-0943, and 02-0944, p. 19 (La.App. 4 Cir. 3/26/03), 844 So.2d 242, 257. The determination of numerosity is partly based upon the number of putative class members and considerations of judicial economy in avoiding a multiplicity of lawsuits, financial resources of class members, and the size of the individual claims. Id.
In the case sub judice, it is asserted that approximately six hundred eighty employees occupied or visited the Plaza Tower between September of 1996 until February of 2001. The trial court, in its judgment, included one of the definable groups as:
[a]ll past or present "contract foster-parents" of the Department of Social Services who were required by the terms of their contractual duties to occupy the "Plaza Tower" office building from 1995 to the date of their departure who were exposed to fungal substances such as mold and mold spores which were growing on building materials and the by-products of the mold and mold spores that were released into the air.
The other definable group included by the trial in the certification of class actions was defined as:
[a]ll present or past individuals employed by the State who worked in Plaza Towers at any time from 1996 to present, who have [sic] exposed to toxic substances and all individuals assigned after the day of filing of this petition.
The trial court also found that the numerosity requirement of the class certification process was satisfied based on the probability that well over five hundred individual suits would be filed if the class certification was denied. Thus, the plaintiffs presented sufficient evidence to prove the numerosity prerequisite for class certification. We find no error in the trial court's determination that the class satisfied the numerosity requirement for class certification. Appellant's assertion that the trial court erred in failing to require plaintiffs to prove numerosity is without merit.

Vagueness
Further, the State of Louisiana asserts that the trial court erred in its class definition in the Watters matter as being too vague. The trial court defined the class as "[a]ny employee of the State of Louisiana who worked in Plaza Towers at any time from 1996 to the present, who have been exposed to toxic substances and all individuals assigned after the date of filing of these proceedings." We find that the trial court did err in the class definition provided for the Watters plaintiffs. In an effort to determine whether a class action may be maintained, a class definition provides the framework against which the court must apply the statutory requirements of La. C.C.P. art. 591. In the case at bar, the trial court, in its judgment, does not provide any requirement for a causal connection between the exposure to the toxic substance and injury sustained. Notwithstanding, "because of a trial court's authority to redefine the class before a decision on the merits of the common issues, appellate courts often allow certification despite a finding that the definition is inadequate for one reason or *278 another." Sutton Steel & Supply, Inc. v. BellSouth Mobility, Inc., 03-1536, p. 5 (La. App. 3 Cir. 6/9/04), 875 So.2d 1062, 1068, citing Duhe v. Texaco, Inc., 99-2002, p. 15 (La.App. 3 Cir. 2/7/04), 779 So.2d 1070, 1080. See Billieson v. City of New Orleans, 98-1232, p. 34 (La.App. 4 Cir. 3/3/99), 729 So.2d 146, 166. Appellate courts may remand the matter to allow any inadequacies to be resolved if appropriate. Sutton, 03-1536, p. 5, 875 So.2d at 1068.

Commonality
Defendants also assert that the trial court erred in finding that the plaintiffs presented common issues of law and fact. We find this specification of error without merit. Another requisite element for certification of a class action is that questions of law and fact common to the class exist. Billieson, 98-1232, p. 19, 729 So.2d at 157. The jurisprudence generally mandates that the common questions preponderate over the individual issues because "[c]lass actions are limited to cases in which it would achieve economics of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." Scott v. Am. Tobacco Co., 98-0452, pp. 8-9 (La. App. 4 Cir. 11/4/98), 725 So.2d 10, 14.
"[I]f the superiority of a class action is disputed, the trial court must inquire into the aspects of the case and decide whether the intertwined goals of effectuating substantive law, judicial efficiency, and individual fairness would be better served by some other procedural device." Johnson v. Orleans Parish Sch. Bd., XX-XXXX-XX-XXXX, p. 13 (La.App. 4 Cir. 6/27/01), 790 So.2d 734, 744. Accordingly, the test of commonality is not a demanding one, and requires only that there be at least one issue, the resolution of which will affect all or a significant number of putative class members. A common question is defined as one which when answered as to one class member is answered as to all of them. Duhe, 99-2002, p. 12, 779 So.2d at 1078.
After careful review of the record, we do not find that the trial court was manifestly erroneous in finding the commonality element was satisfied. A common trial would be the most efficient method to determine the potential liability of Specialty National as well as the State of Louisiana defendants. The ensuing trial would not require the loss of judicial efficiency. Specialty National, as well as the State of Louisiana, generally asserts that plaintiffs' damages have different causes, which defeats class certification. We find this contention in error. This Court, in Scott, 98-0452, pp. 4-5, 725 So.2d at 12-13, dealt with one substance, nicotine, and one effect, health complications. It did not matter that each member of the class was harmed on different dates and sustained different injuries. In Davis, this Court quoted Scott and stated: "Tracing the complaint of the class in the instant case to a single source, nicotine, is consistent with the admonition found in Ford [v. Murphy Oil U.S.A., Inc., 96-2913(La.9/9/97), 703 So.2d 542] that only mass torts `arising form a common cause'. . . may be appropriate for class certification. . ." Davis, 02-0942, p. 16, 844 So.2d at 255, quoting Scott, 98-0452, p.3, 725 So.2d at 13. In the case sub judice, the complaints of the class are traced to the Plaza Tower as a single source and is appropriate for class certification. Accordingly, we find this specification of error without merit.

*279 Typicality or Adequacy of Representation

Defendants assert that the trial court erred in finding that the class representatives meet the requirements of typicality and adequacy. Typicality for class action certification is satisfied if the claims of the class representatives arise out of the same event, practice, or course of conduct that gives rise to the claims of other class members and those claims are based on the same legal theory. Andrews v. Trans Union Corp., 04-2158, p. 8 (La. App. 4 Cir. 8/17/05), 917 So.2d 463, 469. The representative plaintiffs' claims arise out of the Plaza Tower and the State of Louisiana's actions of exposing them to toxic/fungal substances, the same action that gives rise to all of the other putative class members' claims against Specialty National and the State of Louisiana. The putative class members' claims are also all based on the same theory of law. Accordingly, we find defendants' specification of error without merit.
Adequacy is a principal requirement for certification where the class representatives must be adequate for the class. The representatives' claims must be a cross section of, or typical of, the claims of the other class members. Adams v. CSX R.R.s, 615 So.2d 476, 481 (La.App. 4 Cir.1993). In the case sub judice, the class of damages asserted by each representative is typical, although a claim by a particular class representative regarding the exact damage may not be typical. The class representatives will adequately represent the absent class members. The class representatives have suffered injuries that are typical of the class. Accordingly, we do not find that the trial court erred in finding that the class representatives satisfied the requisite elements of typicality and adequacy.

DECREE
Based on the aforementioned reasons, we do not find that the trial court erred in granting plaintiffs' motions for certification of class actions. In light of the evidence submitted, we do not find that the trial court's findings of facts were manifestly erroneous, nor do we find that the trial court abused its discretion to certify the plaintiffs' claims as class actions.
We, however, remand this matter to the trial court to determine whether a causal connection exists between the exposure to the toxic substance and the alleged injury sustained because it will alleviate the inadequacy as to vagueness and redefine the class.
AFFIRMED IN PART; REMANDED IN PART.
TOBIAS, J., dissents in part and assigns reasons.
TOBIAS, J., Dissenting in Part and Assigns Reasons.
I respectfully dissent in part. I find that the majority is correct in holding that the plaintiffs have established that class certification is appropriate; rather than remanding for the trial court to amend its order as to who is a member of the class, I would amend to redefine the class since the change to be made is minor and established by the record on appeal; that is, I would amend and as amended affirm the trial court's judgment. La. C.C.P. art. 2164; Lailhengue v. Mobil Oil Co., 94-2114, 94-2115, 94-2116 (La.App. 4 Cir. 6/7/95), 657 So.2d 542. Our remand merely delays the inevitable, resulting possibly in a further appeal by the appellants.
PER CURIAM.
Considering the foregoing rehearing application filed by appellant, Specialty *280 National, the application is granted for the sole purpose of clarification of this Court's class certification analysis, specifically, La. C.C.P. art. 591(B)(1).[1] We amend our previous opinion as follows.
The trial court certified the class pursuant to La. C.C.P. art. 591(B)(1). The trial court's reasons for judgment stated:
With respect to Article 591(B)(1), the court finds:
As pointed out above, common issues of fact and law exist. There is evidence that absent certification of a class herein individual lawsuits will be brought. Certainly individuals prosecuting separated [sic] actions on their own behalf under the facts and law at issue could conceivably result in varying interpretations. Such differing results have the effect not only of establishing different standards of conduct with respect to Defendant's alleged actions, but will almost inevitable [sic] affect the interests of other class members and impede their ability to protect those interest [sic].
Specialty National alleges that no other toxic tort case has been certified pursuant to La. C.C.P. art. 591(B)(1). Specialty National cites federal case law that rejected certification of toxic tort class actions pursuant to the Federal Rules of Civil Procedure. While both class action statutes, La. C.C.P. art. 591 and FED. R. CIV. P. 23, are similar, Specialty National cited no direct Louisiana case law supporting its interpretation of La. C.C.P. art. 591(B)(1).
Specialty National also requests that this Court remand the issue of class certification pursuant to La. C.C.P. art. 591(B)(3).[2] However, the plaintiffs presented *281 evidence with respect to certification pursuant to La. C.C.P. art. 591(B)(3). The trial court weighed the evidence and declined to extend class certification under (B)(3).
We agree with the trial court's reasoning. The trial court found that over five hundred individual lawsuits would be filed without class certification. The trial court also found that common issues of law and fact exist. Additionally, all claims rely on the same legal theory. Thus, numerous individual lawsuits could result in differing interpretations, which would create different standards of conduct and "affect the interests of other class members."
Therefore, we do not find that the trial court committed manifest error or abused its discretion by certifying the class pursuant to La. C.C.P. art. 591(B)(1).
In all other respects, the application for rehearing is denied.
The appellees have also filed an application for rehearing and we deny the rehearing. The trial court is vested with vast discretion to resolve the matter on remand with judicial efficiency. La. C.C.P. art. 592.[3]
NOTES
[1] The other remaining defendants in the Watters matter are the Department of Health and Hospitals ("DHH"), DSS, DOA, and Specialty National Insurance Company ("Specialty National"), previously Calvert Insurance Company, an insurer for Plaza Tower from September 23, 1996 until March 15, 1997. DOA, DHH, and DSS are hereinafter collectively referred to as the "State of Louisiana."
[2] In their original petition, the Rhodes plaintiffs named as defendants NOOB 1, LP, and NOOB I GC, LLC, the present owners and managers of the Plaza Tower; BG Real Estate Services, Inc. ("BG Real Estate"), leasing and management agent for the owners of Plaza Tower; Monticello Insurance Company, insurer of BG Real Estate; NOOB 1, LP DBA: Plaza Tower Building; Evanston Insurance Company, insurer of BG Real Estate; Baha Towers Ltd. Partnership; and BAHAR Development, Inc., the previous owners or managers of the Plaza Tower.
[3] The matter entitled Rhodes, et al. v. BG Real Estate Services, Inc., District Court Case No. 01-18355, was transferred to Civil District Court, Division "J", and consolidated with the matter entitled Sherry Watters, et al. v. Department of Social Services, et al., District Court Case No. 01-17775.
[4] In their original petition, the Johnson plaintiffs named as defendants the DSS, DOA, BG Real Estate, Baha Towers Limited Partnership, Bahar Development, Inc., NOOB 1 GP, LLC, NOOB 1 LP, Monticello Insurance Company, Evanston Insurance Company, Clarendon American Insurance Company, United National Insurance Company, American Equity Insurance Company, Great Lakes Insurance Company, Alliance General Insurance Company, NOOB 2 GP, LLC, NOOB 2 LP, Schumann Rafizadeh, Mondona Rafizadeh, Behzad Ben Erfany, Cheyda Chaney and MBA Services, LLC.
[5] The plaintiffs in the third consolidated case, Rhodes, et al. v. BG Real Estate Services, Inc., et al. did not join in the Motion for Class Certification.
[1] La. C.C.P. art. 591: Prerequisites; maintainable class actions reads, in pertinent part: B. An action may be maintained as a class action only if all of the prerequisites of Paragraph A of this Article are satisfied, and in addition:

(1) The prosecution of separate actions by or against individual members of the class would create a risk of:
(a) Inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
(b) Adjudication with respect to individual members of the class which would as a practical matter be dispositive of the interest of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
[2] La. C.C.P. art. 591: Prerequisites; maintainable class actions reads, in pertinent part:

B. An action may be maintained as a class action only if all of the prerequisites of Paragraph A of this Article are satisfied, and in addition:
(3) The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to these findings include:
(a) The interest of the members of the class in individually controlling the prosecution or defense of separate actions;
(b) The extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
(c) The desirability or undesirability of concentrating the litigation in the particular form;
(d) The difficulties likely to be encountered in the management of a class action;
(e) The practical ability of individual class members to pursue their claims without class certification;
(f) The extent to which the relief plausibly demanded on behalf of or against the class, including the vindication of such public policies or legal rights as may be implicated, justifies the costs and burdens of class litigation; or
[3] La. C.C.P. art. 592: Certification procedure; notice; judgment; orders reads, in pertinent part:

(A)(3)(c) In the process of class certification, or at any time thereafter before a decision on the merits of the common issues, the court may alter, amend, or recall its initial ruling on certification and may enlarge, restrict or otherwise redefine the constituency of the class or the issues to be maintained in the class action.