TERRI F. LOVE, Judge.
| ¡This appeal arises from the allegedly unconstitutional and unlawful condemnation of properties severely damaged by Hurricane Katrina located in St. Bernard Parish. The plaintiffs allege that a class action lawsuit is the proper procedural vehicle to seek recompense. The trial court found that variables between the plaintiffs precluded the usage of the class action procedure and denied their motion to certify the class. We find that a class action lawsuit is an inappropriate procedural device for these plaintiffs because commonality; typicality, adequacy, ascertainable class definition, predominance, and superiority do not exist, as required by La. C.C.P. art. 591. Therefore, we affirm.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The St. Bernard Parish Government (“SBPG”) created a plan to address an ongoing problem with properties that were severely damaged by Hurricane Katrina, but remained in a state of disrepair years later. SBPG’s plan was allegedly utilized to condemn, and in some instances, demolish the property of approximately 10,000 property owners.
On February 26, 2009, sixteen plaintiffs, with the usage of joinder,[1] filed a |2Petition *595 for Damages alleging that SBPG’s plan caused them to suffer property damage and/or complete demolition of their property, monetary damages, and infringement upon their property rights. The plaintiffs proceeded to file numerous amended and supplemental petitions until, on January 19, 2010, the Thirteenth Amended and Supplemental Petition was filed naming only Nolan Estopinal[2] as the plaintiff, as well as the “Class Plaintiff’ “on behalf of those individuals similarly situated” (collectively “Plaintiffs”). The Thirteenth Amended and Supplemental Petition named the defendants as the Parish of St. Bernard (“SBP”); the Department of Community Development, Office of Safety and Permits; Unified Recovery Group, L.L.C. (“URG”); Asplundh Construction Corporation (“ACC”); Barowka and Bonu-ra Engineers and Consultants, L.L.C. (“BBEC”); A.B.C. Insurance Company; AIG Casualty Company (“AIG”); Scottsdale Insurance Company (“Scottsdale”); and Houston Casualty Company (“Houston”).[3]
Thereafter, the Plaintiffs filed a Motion for Class Action Certification seeking to have their claims proceed as a class action, pursuant to La. C.C.P. art. 591. The proposed class definition included:
All persons who owned real property or property rights in the Parish of St. Bernard, State of Louisiana on or after August 29, 2005, which property or property rights have been unconstitutionally taken or damaged through the actions of the Parish of St. Bernard and/or its agents/contractors, including UNIFIED RECOVERY GROUP, L.L.C., and BA-ROWKA AND BONURA ENGINEERS AND CONSULTANTS, L.L.C., without just compensation following Hurricane Katrina. The class also includes those who were forced to institute legal ^proceedings and incur expenses associated therewith, including motions for temporary restraining orders, to stop the defendants from illegally taking/damaging their properties.
The Plaintiffs’ Fourteenth Amended and Supplemental Petition categorized the Plaintiffs into three sub-groups: 1) “Demolished Property,” 2) “Damaged Property,” and 3) “Harassed.” Seventy-three Plaintiffs were named. BBEC filed a Motion for Partial Summary Judgment Denying Class Certification based upon the premise that the commonality, predominance, superiority, adequacy, and typicality requirements for class certification could not be met. ACC then filed a Motion to Adopt BBEC’s Motion for Partial Summary Judgment Denying Class Certification. URG, Houston, and Scottsdale also filed Motions for Partial Summary Judgment seeking the denial of class certification. The Plaintiffs subsequently dismissed their claims against ACC without prejudice.
Following a hearing and post-hearing written memoranda, the trial court denied the Plaintiffs’ Motion for Class Action Cer *596 tification. Plaintiffs’ Motion and Order for Devolutive Appeal followed.
The Plaintiffs allege that the trial court erred “in failing to certify the class of plaintiffs in this matter under La. Code Civ. P. art. 591(B)(3) and 591(B)(1)(a)”, in “failing to properly apply the law relative to class certification to the facts established,” and “in granting SBP’s exception of no cause of action as to the plaintiffs’ claims for emotional distress.”[4]

\ STANDARD of review

“The standard of review for certification of class actions is bifurcated.” Watters v. Dep’t of Soc. Servs., 05-0824, 05-0325, 05-0326, p. 6 (La.App. 4 Cir. 4/19/06), 929 So.2d 267, 273. “The factual findings are reviewed under the manifest error/clearly wrong standard; the trial court’s discretionary judgment on whether to certify the class or not is reviewed by the abuse of discretion standard.” Id. Therefore, our applicable standard of review is whether the trial court abused its discretion in denying the Plaintiffs’ Motion for Class Action Certification and whether the trial court’s findings in regards to the requirements of class certification were manifestly erroneous. Id.
“In reviewing factual findings, the reviewing court should not set aside the factual findings of the trial court absent manifest error or unless those findings are clearly wrong.” Marshall ex rel. minor children v. Air Liquide-Big Three, Inc., 08-0668, p. 5 (La.App. 4 Cir. 12/17/08), 2 So.3d 541, 546. “The issue to be resolved by a reviewing court is not whether the trier of fact was right or tvrong, but whether the factfinder’s conclusion was reasonable.” Id. “However, if a court of appeal determines that the trial court committed a reversible error of law or manifest error of fact, the court of appeal must ascertain the facts de novo from the record and render a judgment on the merits.” Id.

CLASS CERTIFICATION

“[A] class action is nothing more than a procedural device; it confers no substantive rights.” Id., 08-0668, p. 6, 2 So.3d at 546. “A class action ... permits a representative with typical claims to sue or defend on behalf of, and stand in judgment for, a class of similarly situated persons when the question is one of common interest to persons so numerous as to make it impracticable to bring them |fiall before the court.” Brooks v. Union Pac. R. Co., 08-2035, pp. 9-10 (La.5/22/09), 13 So.3d 546, 554. “The purpose and intent of class action procedure is to adjudicate and obtain res judicata effect on all common issues applicable not only to persons who bring the action, but to all others who are ‘similarly situated.’ ” Id., 08-2035, p. 10, 13 So.3d at 554, quoting Ford v. Murphy Oil U.S.A., Inc., 96-2913, p. 4 (La.9/9/97), 703 So.2d 542, 544.
“Whether a class action meets the requirements imposed by law involves a ‘rigorous analysis.’ ” Dupree v. Lafayette Ins. Co., 09-2602, p. 6 (La.11/30/10), 51 So.3d 673, 679, quoting Brooks, 08-2035, p. 10, 13 So.3d at 554. When conducting this analysis, the trial court “ ‘must evaluate, quantify and weigh [the relevant factors] to determine to what extent the class action would in each instance promote or detract from the goals of effectuating sub *597 stantive law, judicial efficiency, and individual fairness.’ ” Brooks, 08-2035, p. 10, 13 So.3d at 554, quoting McCastle v. Rollins Envtl. Servs. of Louisiana, Inc., 456 So.2d 612, 618 (La.1984).
While any errors to be made in deciding class action issues should, as a general rule, be in favor of and not against the maintenance of the class action because a class certification is always subject to modification or decertification if later developments so require, see La. C.C.P. art. 592(A)(3)(c), that general rule cannot and should not be used as a substitute for the rigorous analysis required to determine whether the prerequisites of Louisiana’s class action provisions have in fact been satisfied.
Price v. Martin, 11-0853, p. 7 (La.12/6/11), 79 So.3d'960, 967.
In order to qualify for class certification, the party seeking certification must prove that:
(1)The class is so numerous that join-der of all members is impracticable.
|⅜(2) There are questions of law or fact common to the class.
(3) The claims or defenses of the representative parties are typical of the claims or defenses of the class.
(4) The representative parties will fairly and adequately protect the interests of the class.
(5) The class is or may be defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for purposes of the conclusiveness of any judgment that may be rendered in the case. This prerequisite shall not be satisfied if it is necessary for the court to inquire into the merits of each potential class member’s cause of action to determine whether an individual falls within the defined class.
La. C.C.P. art. 591(A). If all of the requirements of La. C.C.P. art. 591(A) are met, then one of the following must also be proven:
(1) The prosecution of separate actions by or against individual members of the class would create a risk of:
(a) Inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
(b) Adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
(2) The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
(3) The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to these findings include:
(a) The interest of the members of the class in individually controlling the prosecution or defense of separate actions;
(b) The extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
(c) The desirability or undesirability of concentrating the litigation in the particular forum;
*598 |7(d) The difficulties likely to be encountered in the management of a class action;
(e) The practical ability of individual class members to pursue their claims without class certification;
(f) The extent to which the relief plausibly demanded on behalf of or against the class, including the vindication of such public policies or legal rights as may be implicated, justifies the costs and burdens of class litigation; or
(4) The parties to a settlement request certification under Subparagraph B(3) for purposes of settlement, even though the requirements of Subparagraph B(3) might not otherwise be met.
La. C.C.P. art. 591(B).

CLASS REPRESENTATIVES

Mr. Estopinal, the lead named class representative, gutted and cleaned out the residential property he owned at the time Hurricane Katrina struck. Mr. Estopinal did not recall receiving any letters from the SBPG regarding the condemnation/demolition of his house. However, he did receive letters from the SBPG about his failure to keep the lawn cut. Mr. Estopi-nal filed an appeal of the demolition, but he could not remember why, as he claimed he was unaware his property was going to be demolished. He attended the appeal hearing, but does not remember being present. Mr. Estopinal allegedly discovered that his house was marked for demolition when his daughter telephoned him about a bulldozer engaged in the demolition process in the front yard in January 2009.
Glenn Dixon gutted a portion of his residential property and repaired the roof, but made no other repairs. A few months after Hurricane Katrina, Mr. Dixon allegedly learned from a former neighbor that his property was marked with a demolition placard. Mr. Dixon received a building permit, but did not proceed with repairs. Then Mr. Dixon appealed the demolition of his property, received a notice of the appeal hearing in the mail, and his appeal was granted, based on the [ Rcaveat that he remediate the property. After receiving notice that his property was again slated for demolition, Mr. Dixon filed a second appeal in November 2008, and attended the second appeal hearing.
Ellen Dupriest, owned her residential property when Hurricane Katrina struck the region. Her property was allegedly gutted and sterilized. When Ms. Dupriest applied for a building permit in the summer of 2007, she was aware that homes were being demolished. However, she believed, through hearsay, that only houses remaining ungutted were being demolished. Ms. Dupriest stated that she was never aware that her property was slated for demolition and denied receiving any letters from the SBPG regarding same. Although a FEMA trailer was located on Ms. Dupriest’s property from 2006-2008, and she claimed that someone visited the property “frequently,” Ms. Dupriest was allegedly unaware that the exterior of the property was posted with a placard stating that it was subject to demolition. Ms. Dupriest stated that her family did not remove demolition placards from the exterior of her property. Ms. Dupriest did not appeal the condemnation/forced demolition.
Jeffrey Benedic, a member of Real Investments, L.L.C. (“RIL”), testified that RIL purchased property in April 2008. Mr. Benedic was unaware if the previous owners participated in the administrative process. The previous owner appealed the condemnation/demolition of the property. Mr. Benedic stated that the property was posted with yellow placards with a red “X,” which-was indicative of impending *599 demolition. RIL received a letter from the SBPG stating that the property was subject to demolition. RIL filed an appeal of the demolition and the appeal hearing followed. Mr. Benedic stated that the appeal panel informed them that RIL had until July 15, 2009, to remodel the property to meet the minimum | standards. However, on February 6, 2009, RIL’s property was demolished. The letter denying RIL’s appeal was also dated February 6, 2009.

NUMEROSITY

The first prerequisite for sustaining a class action is that “[t]he class is so numerous that joinder of all members is impracticable.” La. C.C.P. art. 591(A)(1). “No set number of plaintiffs is required in order to fulfill this requirement.” Davis v. Jazz Casino Co., 03-0005, p. 7 (La.App. 4 Cir. 1/14/04), 864 So.2d 880, 888. The Plaintiffs allege in accordance with information provided by BBEC that approximately 8,298 properties were demolished. The trial court found that the numerosity requirement was “met” and this finding was uncontested on appeal. Therefore, the trial court did not commit manifest error in finding that the numerosity requirement was proven pursuant to La. C.C.P. art. 591(A)(1).

COMMONALITY

Next, the Plaintiffs must show that “[t]here are questions of law or fact common to the class.” La. C.C.P. art. 591(A)(2). “A common question is one which when answered as to one class member is answered as to all.” Smith ex rel. Upchurch v. McGuire Funeral Home, Inc., 46,826, pp. 9-10 (La.App. 2 Cir. 6/1/11), 70 So.3d 873, 881. “The mere existence of common questions, however, will not satisfy the commonality requirement.” Price, 11-0853, p. 10, 79 So.3d at 969. “To satisfy the commonality requirement, there must exist ‘as to the totality of the issues a common nucleus of operative facts-’” Id., quoting Dupree, 09-2602, p. 11, 51 So.3d at 682.
Commonality requires a party seeking certification to demonstrate the class members’ claims depend on a common contention, and that common contention must be one capable of class-wide resolution — one where the ‘determination of its truth or falsity will resolve an issue | inthat is central to the validity of each one of the claims in one stroke.’
Id., 11-0853, p. 10, 79 So.3d at 969, quoting Wal-Mart Stores, Inc. v. Dukes, — U.S. -, -, 131 S.Ct. 2541, 2551, 180 L.Ed.2d 374 (2011). “However, in order to meet the common cause requirement, each member of the class must be able to prove individual causation based on the same set of operative facts and law that would be used by any other class member to prove causation.” Brooks, 08-2035, p. 17, 13 So.3d at 559. When addressing commonality, the United States Supreme Court stated in Wal-Mart, that:
[h]ere respondents wish to sue about literally millions of employment decisions at once. Without some glue holding the alleged reasons for all those decisions together, it will be impossible to say that examination of all the class members’ claims for relief will produce a common answer to the crucial question why was I disfavored.
— U.S. -, 131 S.Ct. 2541, 2552, 180 L.Ed.2d 374.
The Plaintiffs allege that the Defendants “involuntarily and unconstitutionally took” their “property and/or property rights without just compensation following Hurricane Katrina” and that SBPG “and its contractors committed trespasses in bad faith during the execution of all involuntary condemnations and demolitions.” Ad *600 ditionally, the Plaintiffs contend that “[t]his case is certifiable since all the claims arise from a singular, unlawful program initiated by the SBPG and executed by it and its contractors;” that “[t]he same arbitrary process was applied to all class members;” and that “[ejven when the rules changed the same legally deficient processes were employed class-wide.” Further, the Plaintiffs assert that the following issues are common to all Plaintiffs:
(1) Whether the condemnations and demolitions of the plaintiffs’ properties were lawfully authorized;
| n(2) Whether the procedure established and implemented by the defendants constituted a denial of due process and a violation of the substantive statutory and constitutional rights of plaintiffs resulting in negligent and/or unlawful, taking of and/or damage to the plaintiffs’ properties;
(3) Whether the actions of the defendants amounted to a “taking” or “damage” to plaintiffs’ property entitling them to compensation to the full extent of each of their losses; and,
(4) Whether the processes employed to involuntarily condemn and demolish the plaintiffs’ properties constituted trespasses upon the plaintiffs’ properties, causing damage to the properties, entitling them to general damages and compensation to the full extent of each of their losses.
The proposed class definition includes three classes of Plaintiffs: 1) those whose property was demolished, 2) those whose property was damaged, and 3) those who instituted legal proceedings to prevent the demolition of their property. Some Plaintiffs owned the subject property when Hurricane Katrina struck, while others purchased unremediated property after Hurricane Katrina.
Determining if a single plaintiffs property was lawfully condemned and/or demolished depends upon a myriad of different factors, which includes, but is not limited to, whether he/she: 1) received a letter from SBPG, 2) appealed the condemnation, 3) attended the appeal hearing, 4) instituted legal action to prevent the SBPG from demolishing the property, 5) previously requested that the SBPG demolish the property, 6) knew the property was going to be demolished and failed to participate in the administrative process, and 7) knew that the previous property owner requested that the SBPG demolish the property. Also, each plaintiffs alleged damages occurred on a different date and for varying reasons, depending on the Plaintiffs’ answers to the questions listed above. Accordingly, each plaintiff will have to prove a differing set of facts and circumstances in order to prove damages allegedly caused by one or more of the Defendants, which requires | ^evidence solely relating to each member of the proposed class. Likewise, each plaintiff must present separate and differing evidence for each of the individual Defendants, depending on the alleged liability of each defendant, if any, to each of the Plaintiffs.
Like the United States Supreme Court in Wal-Mart, we find that the Plaintiffs seek a singular remedy from thousands of decisions allegedly made by the Defendants that are unique to each plaintiff. Therefore, we do not find that the trial court committed manifest error in finding that “there is an absence of common questions of fact and law to adjudicate the claims of the various members or to assign or apportion responsibility on each defendant .in each of the myriad of factual situations encompassed by the definition to certify the class.” The proposed class does not meet the La. C.C.P. art. 951(A)(2) requirement of commonality.

*601
TYPICALITY

“Typicality for class action certification is satisfied if the claims of the class representatives arise out of the same event, practice, or course of conduct that gives rise to the claims of other class members and those claims are based on the same legal theory.” Watters, 05-0324, 05-0325, 05-0326, p. 16, 929 So.2d at 279.
The trial court stated:
Under the facts pled in Plaintiffs’ petition and, even more poignantly and revealing, in the facts and circumstances of the plaintiffs in this case, it is honestly impossible to assert or illogical to believe that the plaintiffs suffered the same type of economic loss. Some properties were demolished, many of those were subsequent to plaintiffs participation in an administrative process or appeals. Others were not demolished but owners [sic] required to expend money to obtain injunctive relief from the threatened demolition. Some properties were purchased after Katrina in a damaged or 1 ^uninhabitable condition, some for profit on resale, some by individuals and others by business entities, some for commercial ventures and others as residences and some received hurricane disaster relief grants and of those, many chose to build elsewhere with funding by the grant. Some properties were purchased by Louisiana Land Trust for which consideration in varying amounts were paid to the former owners and, now, among plaintiffs seeking to certify this class.
The claims of the four class representatives do not arise out of the same event. As we discussed regarding commonality, the Plaintiffs were in different phases of the administrative process, if at all, all of the decisions regarding their respective properties were made at different times, and their claims involved varying degrees and types of damages. As for the same practice or course of conduct, the Plaintiffs contend that SBPG’s plan for dealing with blighted property caused their damages. However, BBEC and URG were not involved in the administrative process of determining which properties to condemn and/or demolish in the same capacity as the SBPG. The record evidence supports the trial court’s factual findings in regards to the lack of typicality of the Plaintiffs’ claims. Therefore, we do not find that the trial court committed manifest error in finding that the typicality requirement, pursuant to La. C.C.P. art. 591(A)(3), was not met.

ADEQUACY

“The fourth prerequisite to class certification is that the representative parties must fairly and adequately protect the interests of the class.” Husband v. Tenet HealthSystems Mem’l Med. Ctr., Inc., 08-1527, p. 11 (La.App. 4 Cir. 8/12/09), 16 So.3d 1220, 1230. “The representatives’ claims must be a cross section of, or typical of, the claims of the other class members.” Watters, 05-0324, 05-0325, 05-0326, p. 16, 929 So.2d at 279. “Class representatives can adequately represent absent class members, even though claims by a particular class | T representative with regard to the exact damages claimed may not be typical, as long as the class of damages asserted by each representative is.” Husband, 081527, p. 11, 16 So.3d at 1230. This Court enumerated factors that may be relevant to determining adequacy in Davis as follows:
(1) The representative must be able to demonstrate that he or she suffered an actual-vis-á-vis hypothetical-injury;
(2) The representative should possess first hand knowledge or experience of the conduct at issue in the litigation;
*602 (3) The representative’s stake in the litigation, that is, the substantiality of his or her interest in winning the lawsuit, should be significant enough, relative to that of other class members to ensure that representative’s conscientious participation in the litigation; and
(4) The representative should not have interests seriously antagonistic to or in direct conflict with those of other class members, whether because the representative is subject to unique defenses or additional claims against him or her, or where the representative is seeking special or additional relief.
03-0005, pp. 8-9, 864 So.2d at 888, quoting Kent A. Lambert, Certification of Class Actions in Louisiana, 58 La. L.Rev. 1085 (1998).
A review of the class representatives, reveals that three participated in the administrative process by filing an appeal. Three class representatives owned their residential property when Hurricane Katrina struck. One class representative purchased the property after the demolition placard was placed on the exterior of the property. The property of all four of the class representatives was demolished.
However, a review of the named Plaintiffs’ depositions depicts a widely varied set of plaintiffs. Some of the Plaintiffs filled out forms requesting that the SBPG demolish their property, only to later attempt and rescind the request. Other Plaintiffs’ properties were not demolished, but allegedly pipes or other items outside of the structures were damaged. Still, more Plaintiffs’ properties were not | ^demolished or damaged because they utilized legal action to prevent the demolition of their properties. While some of the Plaintiffs appealed the demolitions and appeared at the appeal hearings, others either did not attend the appeal hearings or failed to participate in the administrative appeal process. Furthermore, Michael Truax, Sr., an expert appraiser, stated that “mass appraisal techniques ... would not likely result in the fair and accurate determination of damages.”
Given the trial court’s reasoning and our review of the variables among the class representatives and the other deposed Plaintiffs, as summarized above, we do not find that the trial court committed manifest error in finding that the adequacy requirement, pursuant to La. C.C.P. art. 591(4), was not met because “[t]he representative parties” would not “fairly and adequately protect the interests of the class.”

CLASS DEFINED BY ASCERTAINABLE CRITERIA

“The last requirement of La. C.C.P. art. 591 is that the class be defined objectively in terms of ascertainable criteria to allow the court to determine the constituency of the class for purposes of. the conclusiveness of any judgment.” Smith, 46,326, p. 14, 70 So.3d at 883. “The class definition requirement ensures that the class is not amorphous, indeterminate, or vague so that any potential class member can readily determine if he or she is a member of the class.” Id. “This prerequisite shall not be satisfied if it is necessary for the court to inquire into the merits of each potential class member’s cause of action to determine whether an individual falls within the defined class.” La. C.C.P. art. 591(A)(5). “Definability of the class by objective criteria is essential given the res judicata effect of the class action procedure.” Davis, 03-0005, p. 14, 864 So.2d at 891.
The Plaintiffs sought to define the class as follows:
|1rAH persons who owned real property or property rights in the Parish of St. *603 Bernard, State of Louisiana on or after August 29, 2005, which property or property rights have been unconstitutionally taken or damaged through the actions of the Parish of St. Bernard and/or its agents/contractors, including UNIFIED RECOVERY GROUP, L.L.C., and BAROWKA AND BONU-RA ENGINEERS AND CONSULTANTS, L.L.C., without just compensation following Hurricane Katrina. The class also includes those who were forced to institute legal proceedings and incur expenses associated therewith, including motions for temporary restraining orders, to stop the defendants from illegally taking/damaging their properties.
While the proposed class definition provides a method for determining which individuals are members of the defined class, the trial court would still be required to “inquire into the merits of each potential class member’s cause of action to determine whether an individual falls within the defined class” because determining whether each plaintiffs property or property rights were unconstitutionally/illegally damaged or taken depends on individual facts and circumstances. La. C.C.P. art. 591(A)(5). As the trial court stated:
the class definition is faulty since the facts of each case and the cause of each claim are so diverse, a judgment for one member of the class could not support what would be normally considered a matter already adjudicated so as to bar another action or incapable of a conclusiveness of a judgment in a claim for another claim, or in legal terms incapable of supporting a plea of res adjudica-ta.
Accordingly, we find that the Plaintiffs failed to prove that thé class could be objectively defined in compliance with La. C.C.P. art. 591(A)(5).

PREDOMINANCE & SUPERIORITY

Because we found that the trial court did not commit manifest error in finding that the requirements for maintaining a class action pursuant to La. C.C.P. 591(A) were not met, we are not required to address whether the Plaintiffs met [17their burden of proof as to La. C.C.P. art. 591(B). See La. C.C.P. art. 591(B). However, we address these requirements out of an abundance of caution.
“[Plaintiffs were required to prove, pursuant to La. C.C.P. art. 591(B)(3), that common questions of law or fact predominate over any individual issues and that the class action procedure is superior to any other.” Price, 11-0853, pp. 21-22, 79 So.3d at 975. The Plaintiffs contend that the requirements of La. C.C.P. art. 591(B)(3) were met. La. C.C.P. art. 591(B)(3) provides:
(3) The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to these findings include:
(a) The interest of the members of the class in individually controlling the prosecution or defense of separate actions;
(b) The extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
(c) The desirability or undesirability of concentrating the litigation in the particular forum;
(d) The difficulties likely to be encountered in the management of a class action;
*604 (e) The practical ability of individual class members to pursue their claims without class certification;
(f) The extent to which the relief plausibly demanded on behalf of or against the class, including the vindication of such public policies or legal rights as may be implicated, justifies the costs and burdens of class litigation ...

Predominance

“An inquiry into predominance tests ‘whether the proposed classes are sufficiently cohesive to warrant adjudication by representation.’ ” Brooks, 08-2035, p. 19, 13 So.3d at 560, quoting Amchem Products, Inc. v. Windsor, 521 U.S. 591, 117 S.Ct. 2231, 2249, 138 L.Ed.2d 689 (1997). “The predominance requirement is more demanding than the commonality requirement and, as such, |18mandates caution, especially where ‘individual stakes are high and disparities among class members great.’ ” Brooks, 08-2035, p. 19, 13 So.3d at 560, quoting Amchem, 521 U.S. 591, 117 S.Ct. at 2250, 138 L.Ed.2d 689. “The predominance requirement ‘entails identifying the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the issues are common to the class,’ a process that ultimately ‘prevents the class from degenerating into a series of individual trials.’ ” Brooks, 08-2035, p. 19, 13 So.3d at 560, quoting O’Sullivan v. Countrywide Home Loans, Inc., 319 F.3d 732, 738 (5th Cir.2003).
We found that the trial court did not commit manifest error in finding that the commonality requirement for sustaining a class action was not proven. As stated above, whether each plaintiff was deprived of property rights, unconstitutionally or illegally, will depend upon an individual analysis of each case. Hence, the Defendants’ liability to each plaintiff cannot be established with evidence common to all class members. Accordingly, we find that the Plaintiffs have failed to demonstrate predominance. See Dupree, 09-2602, p. 41, 51 So.3d at 699.

Superiority

“When a common character of rights exists, a class action is superior to other available adjudicatory methods in effectuating substantive law, and promoting judicial efficiency and individual fairness.” Husband, 08-1527, p. 17, 16 So.3d at 1233. “If the superiority of a class action is disputed, the trial court must inquire into the aspects of the case and decide whether some other procedural device would better serve these goals.” Id. “The basic goal or aim of any procedural device is ‘to implement the substantive law, and to implement that law |19in a manner which will provide maximum fairness to all parties with a minimum expenditure of judicial effort.’ ” Dupree, 09-2602, p. 41, 51 So.3d at 700, quoting Stevens v. Bd. of Trustees of Police Pension Fund of City of Shreveport, 309 So.2d 144, 151 (La.1975). “If each class member has to prove causation separately, this would defeat the purpose of a class action.” Brooks, 08-2035, p. 21, 13 So.3d at 561. “This is difficult when multiple defendants and causes are involved.” Id.
The trial court found that the following variables prevented class action certification:
[w]hether a claimant participated in the administrative process abrogated the necessity of notice, the extent of that participation, the length of time from participation or notice to demolition, the extent of the damage, the condition of the property, any efforts to repair or restore, voluntary demolitions, whether any payments were to claimants representing the value of the improvements which were later demolished, application or in applicability of the collateral oral *605 source rule, threatened demolition, only to suggest a few distinctions and differences for factual consideration.
Similar to our discussion on predominance, we find that the superiority requirement is not met. The myriad of factual issues, damage issues, and liability issues specific to each plaintiff, as well as each defendant, precludes the utilization of a class action as a proper procedural device. As stated by the Louisiana Supreme Court, “it is clear that each member of the proposed class will necessarily have to offer different facts to establish liability and damages.” Alexander v. Norfolk S. Corp., 11-2793, p. 3 (La.3/9/12), 82 So.3d 1234, 1236. “Certification under these facts would create precisely the situation we cautioned against in Brooks, i.e., the class would degenerate into a series of individual trials.” Id. As such, we find that the trial court did not abuse its vast discretion by denying the Plaintiffs’ Motion for Class Action Certification based on the findings that the | ¡^Plaintiffs’ proposed class definition failed to comply with La. C.C.P. art. 591 and affirm.

DECREE

For the above-mentioned reasons, we find that the trial court did not abuse its vast discretion in denying the Plaintiffs’ Motion for Class Action Certification based on the findings that the proposed class failed to satisfy the requirements of La. C.C.P. art. 591. While numerosity was present, the Plaintiffs did not satisfy their evidentiary burden of proving that the characteristics of commonality, typicality, adequacy, ascertainable class definition, predominance, and superiority were present and required the certification of a class action. Accordingly, we affirm.
AFFIRMED

. La. C.C.P. art. 463. Cumulation, plural plaintiffs or defendants provides that:
*595 Two or more parties may be joined in the same suit, either as plaintiffs or as defendants, if:
(1) There is a community of interest between the parties joined;
(2) Each of the actions cumulated is within the jurisdiction of the court and is brought in the proper venue; and
(3) All of the actions cumulated are mutually consistent and employ the same form of procedure.
Except as otherwise provided in Article 3657, inconsistent or mutually exclusive actions may be cumulated in the same suit if pleaded in the alternative.

. Mr. Estopinal is now deceased.

. URG, BBEC, Scottsdale, and Houston are collectively referred to as the Defendants.

. On December 23, 2013, the Defendants filed an Ex Parte Motion To Dismiss and/or Strike Plaintiffs' Request for Appellate Review of the November 5, 2010 Ruling of the Trial Court Granting the Exception of No Cause of Action as to Damages. This Court granted the motion on January 23, 2014, and struck the "plaintiffs’ request for appellate review of the 2010 ruling of the trial court granting the exception of no cause of action.”