DAVID S. GORBATY, Judge.
 

 | defendants appeal a judgment wherein the trial court granted plaintiffs’ Motion for Class Certification. For the following reasons, we affirm.
 

 FACTS AND PROCEDURAL HISTORY:
 

 Air Liquide America operated a facility at 6600 Old Gentilly Road, in eastern New Orleans. The company manufactured and bottled acetylene from the 1980⅛ until it ceased operations sometime in the 1990’s. As part of its operation, Air Liquide stored carbide lime, a by-product of the acetylene manufacturing process, in an on-site im-poundment area, also known as a “sludge pond.” Carbide lime contains calcium hydroxide, which at sufficient levels of exposure can potentially cause irritation to the respiratory, digestive and visual system.
 

 The Air Liquide facility remained dormant from the 1990’s until 2003 when Air Liquide contracted with Global Lime to remove the approximately 31,000 cubic yards of carbide lime from the impoundment area. The actual removal process began on September 15, 2003, and continued until some time in 2004. The removal process involved excavating and transporting the carbide lime by truck | Jrom Air Liquide to another disposal site. This removal process is what triggered the instant litigation.
 

 Plaintiffs, either persons who resided near the facility or persons who worked in the area of the facility, claimed generally that in the course of the plant operation, carbide lime dust became airborne and drifted into the surrounding neighborhood. Additionally, once the removal process began, the trucks used to transport the carbide lime further dispersed dust into the air causing it to be deposited in the surrounding neighborhood. Plaintiffs filed suit on 6/28/05.
 

 Defendants named in the original petition were Air Liquide-Big Three, Inc., fik/a Lincoln Big Three, Inc., Air Liquide America Corporation, Air Liquide America L.P. (collectively referred to as “Air Liq-uide”), Global Lime Calciner of Louisiana, LLC, Global Lime, LLC (collectively referred to as “Global Lime”), David Berger-on, and E. Roy Baggett, d/b/a RBCHMM. Plaintiffs also sought to be certified as a class, and to that end, filed a Motion to Certify Class on 2/27/06.
 

 In plaintiffs’ First Supplemental and Amending Petition, filed on 10/10/06, defendants American International Specialty Lines, Commerce & Industry Insurance, ACE American Insurance Company, ACE Property and Casualty Insurance Company, Highlands Insurance Company, National Union Fire Insurance Company, Pacific Employers Insurance Company, J & B Trucking of Cameron, L.L.C., d/b/a J
 
 &
 
 B Trucking, ABC Company (an unknown trucking company), and Three C’s Proper
 
 *545
 
 ties, Inc., were added.
 
 [1]
 

 |sAir Liquide; Commerce and Industry Insurance Company (Commerce
 
 &
 
 Industry) and American International Specialty Lines Insurance Company (American Int’l — Global Lime) (alleged insurers of Global Lime); National Union Fire Insurance Company (National Union) and American International Specialty Lines Insurance Company (American Int’l — Air Liquide) (alleged insurers of Air Liquide); and, ACE American Insurance Company and ACE Property & Casualty Insurance Company and Pacific Employers Insurance Company (collectively “ACE”) (alleged insurers of Air Liquide); each filed oppositions to plaintiffs’ Motion to Certify Class.
 

 Following a hearing, a judgment was rendered on March 3, 2008. The trial court granted the motion to certify the class, defining the class as:
 

 Any person, including named plaintiffs and their minor children, who resided or regularly worked within a one-mile radius of the Air Liquide America Facility located at 6600 Old Gentilly Road, New Orleans, Louisiana between September 2003 and the end of 2004, and who may have been exposed to calcium hydroxide coming from the Air Liquide facility.
 

 The judgment also named Michelle Marshall, Dorothy Jones, Tina Andrews and Jim Adams as the class representatives. The trial court gave reasons for judgment.
 

 Air Liquide, Commerce
 
 &
 
 Industry, American Int’l — Global, and ACE each filed suspensive appeals. National Union and American Int’l — Air Liquide filed a devolutive appeal.
 

 I ¿STANDARD OF REVIEW:
 

 The review of certification of class actions is bifurcated. The findings of fact are reviewed under the manifest error/clearly wrong standard, whereas the trial court’s decision to certify a class based on the facts is reviewed under an abuse of discretion standard.
 
 Watters v. Dept. of Social Services,
 
 05-0324, -0325, - 0326, p. 6 (La.App. 4 Cir. 4/19/06), 929 So.2d 267, 273;
 
 Boudreaux v. Dept of Trans. and Dev.,
 
 96-0137, p. 5 (La.App. 1 Cir. 2/14/97), 690 So.2d 114, 119.
 

 Appellants argue that an appellate court may take a less deferential approach to reviewing the factual findings where the trial court fails to “articulate the theory or evidentiary facts upon which its conclusion is based,” They cite
 
 Leal v. Dubois,
 
 00-1285 (La.10/13/00), 769 So.2d 1182, and
 
 Bloxom v. Bloxom,
 
 512 So.2d 839, 843 (La.1987) in support of this position. Appellants specifically argue that the trial court was bound to explain its reasons for accepting Dr. William Zegel’s methodology, but instead only summarized it, thereby requiring this Court to review the facts
 
 de novo.
 

 Plaintiffs counter that appellants do not cite to a single class-action case for this proposition. Rather, the cases cited by appellants discuss the deference given to a judgment in light of a complete trial record.
 

 After reviewing the trial court’s reasons for judgment, we find that the trial court sufficiently articulated the facts upon which it based its decision. Accordingly, we will employ the manifest error/clearly wrong standard to review those factual findings.
 

 
 *546
 
 | Jn reviewing factual findings, the reviewing court should not set aside the factual findings of the trial court absent manifest error or unless those findings are clearly wrong.
 
 Arceneaux v. Domingue,
 
 365 So.2d 1330 (La.1978). However, if a court of appeal determines that the trial court committed a reversible error of law or manifest error of fact, the court of appeal must ascertain the facts
 
 de novo
 
 from the record and render a judgment on the merits.
 
 LeBlanc v. Stevenson,
 
 00-0157 (La.10/17/00), 770 So.2d 766. Although appellate courts should accord deference to the factfinder, they nonetheless have a constitutional duty to review facts.
 
 Ambrose v. New Orleans Police Dep’t Ambulance Serv.,
 
 93-3099, p. 8 (La.7/5/94), 639 So.2d 216, 221. Because appellate courts must perform this constitutional function, they have every right to determine whether the trial court ruling was clearly wrong based on the evidence or clearly without evidentiary support.
 
 Id.
 
 at p. 8-9, 639 So.2d at 221. The reviewing court must do more than simply review the record for some evidence which supports or controverts the trial court’s findings; it must instead review the record in its entirety to determine whether the trial court’s finding was clearly wrong or manifestly erroneous.
 
 Stobart v. State of Louisiana, through Dep’t of Transp. & Dev.,
 
 617 So.2d 880, 882 (La.1993). The issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was reasonable.
 
 Id.
 
 A basic principle which courts of review must follow is: if the trial court or jury’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the |fitrier of fact, it would have weighed the evidence differently.
 
 Id.
 
 at 882-883 (citing
 
 Housley v. Cerise,
 
 579 So.2d 973 (La.1991)) (quoting
 
 Sistler v. Liberty Mutual Ins. Co.,
 
 558 So.2d 1106, 1112 (La.1990)).
 

 Lastly, when there are two permissible views of the evidence, the fact finder’s choice between them cannot be clearly wrong.
 
 Ambrose, supra,
 
 93-3099, p. 6, 639 So.2d at 220-221.
 

 LAW AND ANALYSIS:
 

 We first note that a class action is nothing more than a procedural device; it confers no substantive rights. The purpose of a class action is to permit the institution and management of litigation involving a right of common character vested in a sufficient number of parties as to render their joinder impracticable in an ordinary proceeding. La.Code Civ. Proc. art. 597;
 
 Andry v. Murphy Oil, U.S.A., Inc.,
 
 97-0793, -0800, p. 3 (La.App. 4 Cir. 4/1/98), 710 So.2d 1126, 1128-29.
 

 The only issue to be considered by the trial court and the appellate court is “whether the case at bar is one in which the procedural device is appropriate.”
 
 An-dry, supra.
 
 The trial court should not concern itself with whether the plaintiffs have stated a cause of action or the likelihood that they will prevail on the merits.
 
 Id.
 

 Although four separate appeals were filed in this matter, all parties are alleging the same general errors by the trial court, i.e., plaintiffs failed to satisfy the elements of La.Code Civ. Proc. art. 591.
 

 | .^Louisiana Code of Civil Procedure art. 591 provides:
 

 A. One or more members of a class may sue or be sued as representative parties on behalf of all, only if:
 

 (1) The class is so numerous that join-der of all members is impracticable.
 

 (2) There are questions of law or fact common to the class.
 

 
 *547
 
 (3) The claims or defenses of the representative parties are typical of the claims or defenses of the class.
 

 (4) The representative parties will fairly and adequately protect the interests of the class.
 

 (5) The class is or may be defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for purposes of the conclusiveness of any judgment that may be rendered in the case.
 

 B. An action may be maintained as a class action only if all the prerequisites of Paragraph A of this Article are satisfied, and in addition:
 

 (1) The prosecution of separate actions by or against individual members of the class would create a risk of:
 

 (a) Inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
 

 (b) Adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
 

 (2) The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
 

 (3) The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to these findings include:
 

 (a) The interest of the members of the class in individually controlling the prosecution or defense of the separate actions;
 

 |s(b) The extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
 

 (c) The desirability or undesirability of concentrating litigation in the particular forum;
 

 (d) The difficulties likely to be encountered in the management of a class action;
 

 (e) The practical ability of individual class members to pursue their claims without class certification;
 

 (f) The extent to which the relief plausibly demanded on behalf of or against the class, including the vindication of such public policies or legal rights as may be implicated, justifies the costs and burdens of class litigation; or
 

 (4)The parties to a settlement request certification under Subparagraph B(3) for purposes of settlement, even though the requirements of Subpara-graph B(3) might not otherwise be met.
 

 C. Certification shall not be for the purpose of adjudicating claims or defenses dependent for their resolution on proof individual to a member of the class. However, following certification, the court shall retain jurisdiction over claims or defenses dependent for their resolution on proof individual to a member of the class.
 

 The party seeking class certification has the burden of proving that all requisite elements for certification exist. Thus, the plaintiff must show that the class is definable and that it satisfies the requirements of numerosity, commonality, typicality, and adequacy of representation.
 
 Watters,
 
 05-0324, -0325, -0326, p. 10, 929
 
 *548
 
 So.2d at 275;
 
 Davis v. Jazz Casino Co.,
 
 03-0005, p. 4 (La.App. 4 Cir. 1/14/04), 864 So.2d 880, 886. Appellants argue that the trial court erred in certifying the class because plaintiffs failed to prove all of the necessary elements for certification.
 

 Appellants’ most notable objection to the certification of the class is rooted in the trial court’s acceptance of the testimony of Dr. William Zegel. Dr. Zegel was retained by plaintiffs to prepare an 19analysis of the geographical breadth of carbide lime dust exposures caused by activities at the Air Liquide facility. The court accepted Dr. Zegel as an expert in chemical engineering and the movement of chemicals through the environment, including air dispersion modeling.
 

 Appellants specifically and vehemently complain that the trial court erred in accepting Dr. Zegel’s opinion. Thus, because Dr. Zegel’s opinions should have been rejected, the trial court erred in certifying the class because the class could not be defined, specifically because the geographical parameters could not be ascertained to determine the requirement of numerosity.
 

 Appellants claim that Dr. Zegel’s air dispersion model was severely flawed because it was based on faulty information. These faulty calculations resulted in an impermissibly broad and overly inclusive geographical class, the result of which is indefinite geographical boundaries impacted by the alleged disbursement of carbide lime dust. It is thus impossible for potential class members to determine their eligibility as class members.
 

 Dr. Zegel opined that most of the carbide lime dust was dispersed into the surrounding neighborhood off the backs of trucks transporting the substance away from the Air Liquide facility. However, appellants argue that Dr. Zegel’s conclusions are wrong because he did not have accurate information on the number of trucks hauling each day, the rate of speed at which they traveled, and the types of trucks used, i.e., tankers or dump trucks.
 

 ImFurther, appellants submit that Dr. Zegel’s opinion was flawed because he failed to use meteorological data necessary to calculate wind directions and speed. Instead of using actual data, Dr. Zegel calculated dust dispersion using a constant eight mile per hour wind from the south.
 

 Lastly, Dr. Zegel failed to account for the moisture content in the carbide lime and the relative humidity on each day during the excavation and removal of the carbide lime. Clearly, according to appellants, the moisture content in the carbide lime and the daily humidity would have a direct correlation to the amount of dust created during excavation and transport.
 

 The crux of this assignment of error is that the trial court erred in relying on plaintiffs’ expert instead of defendants’ experts to determine the geographical area of the class. Plaintiffs argue that Dr. Ze-gel’s opinions are based on sound, tested scientific principles.
 

 According to the testimony, Dr. Zegel’s model and opinion were based on a three-step process. First, he analyzed the facts known and documented about the carbide lime removal process, including the available evidence from the Louisiana Department of Environmental Quality (EPA), Air Liquide and Global Lime records, and class representative testimony. From this analysis, Dr. Zegel could identify those physical locations and activities capable of creating emissions. He identified locations and activities which would emit dust: the impoundment site and the piles of carbide lime around it, the digging |nup and dropping of the materials, and trucks driving on unpaved and paved roads on and near the site.
 

 
 *549
 
 The second step in Dr. Zegel’s analysis involved using an industry methodology developed by the EPA to determine how much dust was released into the air in each place by each activity.
 

 Finally, Dr. Zegel applied the above results to the EPA Air Model of Air Impacts as the basis for his dispersion model. Dr. Zegel testified that his results represented a snapshot in time of the probable concentrations of carbide lime particulates that reached into the surrounding neighborhood on any given day.
 

 Plaintiffs explain that Dr. Zegel’s air model was based on a well-known EPA air modeling tool, which accounts for meteorological variations. In his testimony, he explained that he used carbide lime moisture content from an authoritative source, a specific silt content figure from another authoritative source, and NOAA data and data obtained from the Lakefront Airport to determine wind speeds.
 

 Considering the standard of review for facts, and after reading the testimony given at the hearing, we cannot say that the trial court was manifestly erroneous in accepting Dr. Zegel’s opinions, and, therefore we find that the trial did not abuse its discretion in considering those opinions when it certified the class.
 

 Appellants also argue that the class definition is overly broad and vague such that it is impossible for the parties to identify an aggrieved group of members.
 

 |12As noted above, the trial court defined the class as:
 

 Any person, including named plaintiffs and their minor children, who resided or regularly worked within a one-mile radius of the Air Liquide America Facility located at 6600 Old Gentilly Road, New Orleans, Louisiana between September 2003 and the end of 2004, and who may have been exposed to calcium hydroxide coming from the Air Liquide facility.
 

 Appellants claim that the definition is flawed, i.e., the geographical area is too large (this allegation is based on Dr. Ze-gel’s air dispersion model previously addressed), and the phrase “resided or regularly worked” is vague, ambiguous, overbroad, and indeterminate.
 

 Air Liquide specifically argues that no testimony was presented by any class representative who regularly worked within the one-mile radius. Presumably, Air Liq-uide is arguing that because there is no class representative for the “worked the area” designation, it is inappropriate to include such a designation in the potential class definition. However, Air Liquide acknowledges that Jim Adams, a proposed class representative, testified in his deposition that he worked for HANO in the area.
 
 [2]
 

 | ^Nonetheless, appellants argue that simply stating that one regularly worked in the area is not sufficient, because the term “regularly worked” is vague, ambiguous, overbroad, and indeterminate. The term could encompass a person who regularly worked one hour a day every week, every month, or once a year, but who never worked on days when the transport of the carbide lime occurred.
 

 In
 
 Andry, supra
 
 at 97-0793, -0800, p. 6, 710 So.2d at 1130, this Court explained:
 

 In light of the objective [purpose] of this procedural device, which is the efficient
 
 *550
 
 resolution of common issues applicable to a large number of claims, it was reasonable for the court to establish a geographic boundary for the class that was broad enough to encompass all potential class members.”
 

 The Court concluded that if no evidence is presented to support some types of claims, the class action will allow those claims to be disposed of, as a group, very efficiently using other procedural devices such as summary judgment. Alternatively, we note that the trial court can alter, amend or recall its initial ruling on certification and may enlarge, restrict, or otherwise redefine the constituency of the class or the issues to be maintained in the class action at any time prior to a trial on the merits. La.Code Civ. Proc. art. 592 A(3)(c);
 
 also see Scott v. American Tobacco Co.,
 
 98-0452 (La.App. 4 Cir. 11/4/98), 725 So.2d 10.
 

 We find no merit to appellants’ argument on this issue.
 

 Appellants also argue that the requirement of “common character” has not been met. To satisfy the “common character” requirement, the party seeking to |14certify the class must establish that questions of law or fact common to the members of the class predominate over any questions affecting only individual members.
 
 Cotton v. Gaylord Container,
 
 96-1958, p. 18 (La.App. 1 Cir. 3/27/97), 691 So.2d 760, 771. Class actions are restricted to cases “in which it would achieve economies of time, effort and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.”
 
 McCastle v. Rollins Environmental Services of La., Inc.,
 
 456 So.2d 612, 616 (La.1984);
 
 Gaylord, supra
 
 at p. 19, 691 So.2d at 771.
 

 Appellants argue that the record demonstrates that causation, dosage levels based on number of variables such as behavioral, meteorological and trucking variables, and physiological responses vary greatly across members of the prospective class. Citing
 
 Ford v. Murphy Oil, U.S.A., Inc.,
 
 96-2913 (La.9/9/91), 703 So.2d 542, they complain that the class action in this instance is impracticable. We find appellants’ reliance on
 
 Ford
 
 is misplaced.
 

 Ford
 
 involved a class of plaintiffs suing four separate entities claiming that each entity emitted pollutants over a period of time that had a synergistic, damage-causing impact on the community. Because each plaintiff would have to prove different facts to establish specific damages on specific dates caused by the defendants’ liability, either individually or combined, the Supreme Court reversed the trial court’s certification of the class.
 
 Ford v. Murphy Oil, U.S.A., Inc.,
 
 96-2913, -2917, -2929 (La.9/9/97), 703 So.2d 542. The Court further reasoned that class certification was inappropriate because four separate defendants were involved, necessitating each plaintiff to prove his damages caused by each | ^defendant, and the fact that widely divergent types of personal, property and business damages were involved.
 
 Id.
 
 at 549.
 

 To the contrary, although each plaintiff will have different medical issues, and that other factors such as smoking, length of exposure, etc., exist, in this case plaintiffs are only suing one facility, and the contractors, subcontractors, and insurance companies directly involved with that facility. Further, plaintiffs are only seeking monetary damages.
 

 The Supreme Court specifically addressed the “common character” factor for class certification in
 
 McCastle v. Rollins Environmental Services of Louisiana, Inc.,
 
 456 So.2d 612 (La.1984). In
 
 McCastle,
 
 testimony was received that the members
 
 *551
 
 of the class lived in a low income area. Plaintiffs believed that the noxious odors which caused them health issues were being emitted by a nearby land farm owned by defendant. The proposed class representatives testified that they suffered from physical ailments such as tightness of chest, difficulty in breathing, headaches and tearing of the eyes. The noxious fumes of which they complained were sometimes more prevalent and intense than at other times, a factor largely dependent on the wind conditions. The trial court dismissed plaintiffs’ suit as a class action, and the First Circuit affirmed. The Supreme Court, however, reversed.
 

 In an opinion written by Justice Dennis, the Court explained:
 

 The single most important issue is whether the defendants’ activities on their hazardous waste land farm deprived their neighbors of the liberty of enjoying their own land or caused them unreasonable inconvenience or damage. Offering the same facts, all class members will strive to establish that the hazardous waste materials placed in the soil by the defendants emitted gases, fumes and odors capable of causing harm and unreasonable inconvenience to persons in the neighborhood. Each hfidass member stands in an identical position with respect to the following issues: (1) whether hazardous waste materials of the quality and quantity capable of causing the damage and unreasonable inconvenience alleged were present at the land farm on the pertinent dates, (2) whether the land farm emitted harmful and malodorous gases on the dates alleged, (3) whether the probable dispersion patterns of the gases and odors emitted include the areas within which the residences of the members of the class are located.
 

 The court of appeal concluded that these common issues did not predominate over the potential individual issues of whether each member of the class was harmed or inconvenienced on the same dates or sustained the same amount of injury. Our appellate brethren fell into clear error. From the pleadings and showing it appears that on all the dates in question the land farm received similar hazardous waste from the same source and that the land farming operations were conducted consistently. Consequently, there exists as to the totality of issues a common nucleus of operative facts such as would justify allowing the class action to proceed. That individuals may have been injured or unreasonably inconvenienced by noxious gases on varying dates by the defendant’s land farm operations does not constitute a material variation in the elements of the class members’ claims. With respect to the question of damages, individual questions of quantum do not preclude a class action when predominant liability issues are common to the class.
 

 Id.
 
 at 619-620 (citations omitted; emphasis added).
 
 McCastle
 
 is still good law; and we find it to be applicable to the case at hand. Defendants’ arguments on this issue lack merit.
 

 Appellants also claim the trial court erred in certifying the class because plaintiffs’ failed to satisfy the class criteria for either La.Code Civ. Proc. art. 591(B)(1) or (B)(2). They argue that class certification under (B)(1) or (B)(2) is appropriate only in cases where there are no individual issues and where plaintiffs are seeking nothing |17but an injunction or to share equally in a limited fund. We disagree with appellants’ interpretation of the statute.
 

 
 *552
 
 Appellants specifically claim that certification pursuant to 591(B)(1) is not appropriate because plaintiffs are only seeking money damages. In
 
 Watters,
 
 this Court affirmed the certification of the single source, personal injury class seeking money damages.
 
 Watters,
 
 05-0324, -0325, - 0326 (La.App. 4 Cir. 4/19/06), 929 So.2d 267. We have no reason to rule differently in this case; the case law cited by appellants’ is either federal law or law from other state jurisdictions which we are not bound to follow.
 

 Appellants also argue that common issues of law and fact do not exist. Thus, plaintiffs’ have failed to satisfy the requirements of 591(B)(3). They argue that predominance involves a much more rigorous inquiry than commonality, and cite
 
 Ford v. Murphy Oil U.S.A., Inc., supra
 
 at 550 (class certification is inappropriate when any common issue “does not predominate over the individual liability issues”). As noted
 
 infra,
 
 the
 
 Ford
 
 class was not certified mainly because plaintiffs were attempting to sue four different defendants who allegedly emitted a vast variety of noxious chemicals, causing any number of different ailments. We once again find
 
 Ford
 
 inapplicable to the facts of this case.
 

 The trial court in reasons for judgment stated: “With respect to Article 591(B), the Court finds common issues of fact and law exist and that, without class certification, individual lawsuits will be brought. If individual suits are prosecuted under the facts and law at 11Rissue, it is conceivable that various interpretations could result. Differing results effectively create different standards of conduct with respect to the defendants’ actions and can affect the interests of other class members and their ability to protect said interests. Accordingly, the required elements of class certification under 591(B) are met.”
 

 In a
 
 per curiam
 
 issued by this Court following the grant of rehearing, the
 
 Wat-ters
 
 court noted the trial court’s reasons: “[c]ommon issues of fact and law exist. There is evidence that absent certification of a class herein individual lawsuits will be brought. Certainly individuals prosecuting separated [sic] actions on their own behalf under the facts and law at issue could conceivably result in varying interpretations. Such differing results have the effect not only of establishing different standards of conduct with respect to Defendant’s alleged actions, but will almost inevitable [sic] affect the interests of other class members and impede their ability to protect those interest [sic].”
 
 Watters, supra
 
 at 05-0324, -0325, -0326, p. 17, 929 So.2d at 280. This Court accepted that reasoning as sound as do we when applied to the facts of this case.
 

 Lastly, appellants argue that plaintiffs did not argue for certification pursuant to 591(B)(2), and the trial court did not base its ruling on 591(B)(2). They cite
 
 Defraites v. State Farm Mutual Automobile Ins. Co.,
 
 03-1081 (La.App. 5 Cir. 1/27/04), 864 So.2d 254 in support. In
 
 Defraites,
 
 the plaintiff was seeking injunctive relief and the court found he did not meet the criteria for certification pursuant to 591(B)(2). In this case, plaintiffs are not seeking 1, conjunctive relief, because there is nothing to enjoin. The activities by appellants of which plaintiffs complain ceased years ago. Article 591(B)(2) is not applicable to this case. We find no merit in appellants’ argument.
 

 Accordingly, for the reasons assigned herein, we affirm the judgment of the trial court.
 

 AFFIRMED.
 

 [1]
 

 . Various cross-claims and third-party demands were filed in this lawsuit, but are not germane to this appeal.
 

 [2]
 

 . We note that Air Liquide takes issue with the fact that Mr. Adams was "inexplicably absent” from the hearing. However, our review of the records reveals that Air Liquide had no objection at the hearing to submitting Mr. Adams’ deposition in lieu of live testimony-