GREMILLION, Judge.
 

 I,The defendants, Roy 0. Martin Lumber Company and Beazer East, Inc., appeal the trial court’s certification of the plaintiffs’ class action. For the following reasons, we affirm.
 

 FACTUAL AND PROCEDURAL BACKGROUND
 

 This litigation has a lengthy and complicated history. The plaintiffs, who reside in Alexandria, Louisiana near the Dura-Wood Treating Company (which was owned by Martin from 1970 to 2000), filed suit urging that Dura-Wood’s creosote-treated railroad tie operation damaged them property due to contaminated soil, sediments, groundwater, and buildings.
 
 [1]
 
 
 *1111
 
 Beazer owned and operated the facility (under the name Kopper’s Company) from December 1940, until its sale to Martin in May 1970. Martin owned the facility from May 1970 to December 31, 1999, when it sold the facility to Railworks Wood products, Inc.
 
 [2]
 
 The plaintiffs allege that Martin and Beazer’s environmentally unsound wood-treatment practices have caused a significant amount of hazardous and toxic chemicals to be released into the environment including into the air, soil, and water of the communities where the plaintiffs reside.
 

 For several years, Martin and Beazer have argued that a class certification is improper. First, their Motion to Strike Class Action Allegations was denied as being premature. Next, Martin and Beazer filed a Motion to Strike Demand for Class Relief, which was denied. Thereafter, Martin and Beazer filed a Second 12Motion to Strike Demand for Class Relief. It appears to have been denied. Finally, plaintiffs filed a Memorandum In Support of Class Certification. A class certification hearing was held over two days. The trial court took the matter under advisement for several months due to the voluminous evidence submitted by the parties. Ultimately, it rendered extensive written reasons for judgment and granted certification of the plaintiffs’ class action. Martin and Beazer now appeal.
 

 ISSUES
 

 Martin and Beazer assign as error:
 

 1.The trial court erred as a matter of law in finding that the liability of each defendant, the existence of any injury, and the causation of any injury are issues of damages.
 

 2. The trial court erred as a matter of law in certifying a class when issues exist as to liability that are not subject to common proof.
 

 3. The trial court erred by including both current and former property owners in the class.
 

 4. The trial court erred in finding that the class can be objectively defined and ascertained.
 

 5. The trial court erred in finding that a class action is a superior alternative to individual litigation when the plaintiffs assert a novel claim for clean-up of attic dust and when nearly six years ago approximately five hundred members of the putative class rejected the notion of proceeding as a class action and filed individual claims.
 

 DISCUSSION
 

 The supreme court recently summarized Louisiana law regarding class actions in
 
 Brooks v. Union Pacific R.R. Co.,
 
 08-2035, pp. 9-11 (La.5/22/09), 13 So.3d 546, 554 (footnote omitted):
 

 A class action is a nontraditional litigation procedure which permits a representative with typical claims to sue or defend on behalf of, and stand in judgment for, a class of similarly situated persons when |sthe question is one of common interest to persons so numerous as to make it impracticable to bring them all before the court.
 
 Ford v. Murphy Oil U.S.A., Inc.,
 
 96-2913 (La.9/9/97), 703 So.2d 542, 544. The purpose and intent of class action procedure is to adjudicate and obtain
 
 res judicata
 
 effect on all common issues applicable not only to persons who bring the action, but to
 
 *1112
 
 all others who are “similarly situated.”
 
 Id.
 

 The determination of whether a class action meets the requirements imposed by law involves a rigorous analysis. The trial court “must evaluate, quantify and weigh [the relevant factors] to determine to what extent the class action would in each instance promote or detract from the goals of effectuating substantive law, judicial efficiency, and individual fairness.”
 
 McCastle v. Rollins Environmental Services of Louisiana, Inc.,
 
 456 So.2d 612, 618 (La.1984). In so doing, “the trial court must actively inquire into every aspect of the case and should not hesitate to require showings beyond the pleadings.”
 
 Id.
 
 (Citing
 
 Stevens, v. Board of Trustees of Police Pension Fund of City of Shreveport,
 
 309 So.2d 144, 152 (La.1975)). “[I]f there is to an error make, it should be in favor and not against the maintenance of the class action, for it is always subject to modification should later developments during the course of the trial so require.”
 
 Id.
 
 at 620 (citing La. C.C.P. art. 593.1(B));
 
 Esplin v. Hirschi,
 
 402 F.2d 94 (10th Cir.1968); 1 H. Newburg, Class Actions, § 1160(e) (1977).
 

 In reviewing a trial court judgment regarding class certification, factual findings are subject to the manifest error standard, but the trial court’s ultimate decision of whether or not to certify the class is reviewed by the abuse of discretion standard.
 
 See Banks v. New York Life Ins. Co.,
 
 98-0551 (La.7/2/99), 737 So.2d 1275, 1280 (on rehearing) (reviewing the trial court’s decision to certify the class under the abuse of discretion standard.).... “Implicit in this deferential standard is recognition of the essentially factual basis of the certification inquiry and of the district court’s inherent power to manage and control pending litigation.”
 
 Id.
 
 at 325 (citing
 
 Allison v. Citgo Petroleum Corp.,
 
 151 F.3d 402, 408 95th Cir.1998). However, whether the district court applied the correct legal standards in determining whether to certify the class is reviewed
 
 de novo.
 

 All class actions must meet the five requirements set forth in La.Code Civ.P. art. 591(A). Those requirements are commonly called 1) numerosity, 2) commonality, 3) typicality, 4) adequacy, and 5) class definition.
 
 [3]
 
 Assuming those 14basic requirements are met, then four types of class action are potentially available. Each type has its own additional requirements which are listed in part (B) of Article 591. In this matter, the plaintiffs seek certification of a 591B(3) action which should be maintained if common issues of law or fact “predominate” over “individual” issues of law or fact. Louisiana Code of Civil Procedure Article 591(B)3 reads:
 

 An action may be maintained as a class action only if all of the prerequisites of Paragraph A of this Article are satisfied, and in addition:
 

 
 *1113
 
 (3) The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superi- or to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to these finding include:
 

 (a) The interest of the members of the class in individually controlling the prosecution or defense of separate actions;
 

 (b) The extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
 

 (c) The desirability or undesirability of concentrating the litigation in the particular forum;
 

 (d) The difficulties likely to be encountered in the management of a class action;
 

 (e) The practical ability of individual class members to pursue their claims without class certification;
 

 lfi(f) The extent to which the relief plausibly demanded on behalf of or against the class, including the vindication of such public policies or legal rights as may be implicated, justified the costs and burdens of class litigation.
 

 The burden rested with plaintiffs to meet the numerosity, commonality, typicality, adequacy of representation, and objectively definable class requirements of La. Code Civ.P. art. 591(A) as well as meeting the predominance and superiority requirements of La.Code Civ.P. art. 591(B)(3).
 
 See Duhé v. Texaco, Inc.,
 
 99-2002 (La.App. 3 Cir. 2/7/01), 779 So.2d 1070, writ
 
 denied,
 
 01-637 (La.4/27/01), 791 So.2d 637.
 

 ASSIGNMENTS ONE AND TWO
 

 The crux of defendants argument is that the trial court erred in certifying a class by applying incorrect legal standards pertaining to the “common cause” requirement. Specifically, they argue that the trial court erroneously found that “many conceded individual issues were ones for damages, not liability.” Defendants assert that the plaintiffs must prove that defendants breached the standard of care by permitting some kind of damaging emission and that plaintiffs will be unable to meet this burden because the facility has had three owners who have engaged in varying operations over a 66-year period. Defendants further argue that, at various times, different chemicals were emitted for different durations and that different legal standards applied to plant activities over the years.
 

 Defendants also argue that the trial court erred as a matter of law in characterizing individual issues as affirmative defenses or damages when they are actually issues of causation, i.e., (1) a causal connection between specific emissions and damage to property and, (2) If PAHs (polycyclic aromatic hydrocarbons) or dioxins exist on a property, whether a facility emission was the source or one of the | ¿multiple other source of PAHs or dioxins in the Alexandria area was the source. Pertaining to the latter claim, Defendants argue that if potential alternative sources exist, a class cannot be certified.
 

 Finally, Defendants argue that if the jury finds that the facility is shown to be the source of an emission on a property, it must then decide who operated the facility at the time of the emission. Defendants argue that if the cause is ascribed to only one of the defendants, then there is no injury or causation as to the other two and that an apportionment issue such as this alone precludes class certification.
 

 The trial court, in its written reasons, stated:
 

 In the case at bar, plaintiffs argue that the following assertions support the
 
 *1114
 
 predominance requirement: The facts of each chemical release are a common issue to the claims of all class members; the law governing the responsibility of parties for remediation and/or testing is common; the applicable law related to the claim of diminution of property value is common to all property-owner class members; and that the extent of contamination and the issue of liability predominates over any questions important to only individual members of the class.
 

 Defendants, however, argue that “the only proposed factual finding — whether the facility caused ‘offsite migration of several known human carcinogens’ — is not a predominating, common question”. Defendants explain that the issue of whether the Facility was the source of the offsite migration of carcinogens would not predominate over the individual issues, mainly individual claims for damages, and that this would result in later mini-trials. Further, defendants argue that the plaintiffs have failed to prove the requirements necessary to maintain a contamination claim: [1] that emissions from particular defendants landed on their property, and [2] were the proximate cause of some quantifiable and actionable injury to their property. While these requirements reflect plaintiffs’ burden of proof at a trial on the merits, they do not accurately reflect plaintiffs’ burden of proof for the purposes of class certification. Plaintiffs have presented sufficient evidence, including sampling data taken and evaluated by plaintiffs’ experts that defendants may have improperly handled and/or disposed of hazardous chemicals which may have resulted in contamination of plaintiffs’ property. It should be noted, however, that defendants contest the validity of plaintiffs’ sampling methodology. Dr. Kester opines that using attic |7dust for risk assessment at all is not an appropriate method of measuring for PAHs and dioxins since there are so few studies regarding attic dust. Also, Dr. Uhler, one of defendants’ experts, opines that it was unjustified for plaintiffs’ experts to apply soil screening levels to the attic dust samples they procured. However, Dr. Michael Crouch, one of plaintiffs’ expert witnesses, testified that sampling attic dust is an accepted way of detecting the presence of contaminants in a structure since “attic dust is a representation over time of what a structure was exposed to.” Furthermore, Dr. Crouch testified that the use of soil as a screening standard for the attic dust was appropriate and had been used in previous cases. Not surprisingly, this case contains conflicting expert opinions as to the validity of attic dust sampling and the appropriateness of applying soil screening levels to these attic dust samples. In a similar case, the Fourth Circuit was presented with the issue of whether the trial court was erroneous in relying on the testimony of one of plaintiffs’ experts, Dr. Ze-gel.
 
 Marshall v. Air Liquide-Big Three, Inc.,
 
 08-0668 (La.App. 4 Cir. 12/17/08; 2 So.3d 541, 548. In this case, property owners neighboring a manufacturing plant brought suit against a manufacturing plant, alleging that the plant was responsible for the release of carbide lime dust.
 
 Id.
 
 at 544. At the hearing to determine whether class certification was appropriate, defendants argued that Dr. Zegel’s air dispersion model was flawed because it was based on faulty calculations, particularly in that Dr. Zegel lacked accurate information about the plant’s hauling process and meteorological data necessary to calculate wind directions and speed.
 
 Id.
 
 at 548. Plaintiffs argued that Dr. Ze-gel’s air model was based on a well-known EPA air modeling tool, which accounted for meteorological variations.
 

 
 *1115
 

 Id.
 
 at 549. In addressing defendants’ concerns, the appellate court stated the following:
 

 Considering the standard of review for facts, and after reading the testimony given at the hearing, we cannot say that the trial court was manifestly erroneous in accepting Dr. Zegel’s opinions, and, therefore we find that the trial court did not abuse its discretion in considering those opinions when it certified the class.
 
 Id.
 

 The appellate court also noted that the only issue to be considered by the trial court and appellate court during a class action hearing is “whether the case at bar is one in which the procedural device is appropriate,” not whether “the plaintiffs have stated a cause of action or the likelihood that they will prevail on the merits.”
 
 Id.
 
 at 546. In the case at bar, the Court finds that plaintiffs’ experts sampling and conclusion drawn from the sampling, in connection with the deposition testimony of plaintiff experts taken as a whole, provides a sufficient basis for class certification. Therefore, the Court rules that a class action in this case |sis procedurally appropriate.
 

 The trial court considered the conflicting expert testimony regarding the sampling methodology (attic dust and soil testing) used by the plaintiffs. The trial court found that the facts set forth by plaintiffs’ experts were sufficient to certify the class, noting that success on the merits was the not the issue at this juncture. We cannot find any manifest error in its finding. This finding does not ensure success on the merits, but merely indicates that the class action procedural device is appropriate.
 

 Although we recognize that the lengthy period of time over which plaintiffs claim the emissions occurred and the fact that succeeding owners of the plant complicates matters, we do not find that these facts compel a finding that class certification is inappropriate. The trial court properly found that plaintiffs met the common cause requirement in showing that one factual issue is common to the potential class — whether defendants’ off-site emissions caused property damage to the residences in the area surrounding the plant. This issue will not be resolved by examining individual residences in the area. Rather, the elevated toxin levels must be shown on a area-wide basis as emanating from the defendants’ facility.
 

 We find this case to be factually similar to
 
 Clark v. Trus Joist MacMillian,
 
 02-676 (La.App. 3 Cir. 12/27/02), 836 So.2d 454,
 
 writ denied,
 
 03-275 (La.4/21/03), 841 So.2d 793, in which a group of residents sought class certification against a wood-processing plant for polluting their property and causing them personal injury. There we stated:
 

 [T]he common issue for all plaintiffs is whether the Trus Joist plant during the time period in question contained toxic chemicals of such a level to cause harm to plaintiff and whether plaintiffs were in fact harmed. We find this issue decided for one class member will be decided for all.
 

 \<Jd.
 
 at 461. Similarly, the common issue for all plaintiffs herein is whether the plant in question during the time period specified emitted PAHs of such a kind and quantity as to cause harm to plaintiffs and whether plaintiffs were in fact harmed.
 

 Defendants heavily rely on
 
 Brooks,
 
 13 So.3d 546, for the proposition that the plaintiffs will be unable to prove common causation. In
 
 Brooks,
 
 flooding followed a heavy rainstorm. The plaintiffs attempted to certify a class based on defective storm water drainage structures in three different drainage basins where multiple defendants were responsible for different portions of the drainage structures. The
 
 *1116
 
 supreme court stated, “The trial court’s factual finding of common causation was manifestly erroneous as all experts testified that the predominate cause of flooding would vary depending on whether an individual lived in the Northern, Southern or Eastern basin.”
 
 Id.
 
 at 559. In
 
 Brooks
 
 the supreme court clearly stated that it granted the writ application to “determine the proper standards for analyzing class certification.”
 
 Id.
 
 at 548. Regarding common causation, the supreme court stated:
 

 In requiring common causation in a mass tort case, we point out that this does not mean that the amount or extent of damages must be common to all class members. As we have stated, “the mere fact that varying degrees of damages may result from the same factual transaction and same legal relationship or that class members must individually prove their right to recover does not preclude class certification.”
 
 Bartlett v. Browning-Ferns Industries Chemical Services, Inc.,
 
 99-0494 (La.1 1/12/99), 759 So.2d 755, 756. However, in order to meet the common case requirement, each member of the class must be able to prove individual causation based on the same set of operative facts and law that would be used by any other class member to prove causation.
 

 Id.
 
 at 558-559.
 

 In
 
 Brooks
 
 the only common event was the rainfall, which was not attributable to defendants. In this case, however, the common event is the alleged off-site emission of toxic levels of PAHs attributable to a singular facility. If class | ^certification required absolute conformity among the lifestyles of every potential class member (i.e. the use of burn barrels, smokers, and barbeque pits; the size of attics; etc.) then no class would ever be certified. The common cause of off-site emissions of toxic substances (PAHs) from the plant still exists regardless of whether there are alternate sources of PAHs existing in the environment. The trial court found that alternate PAH sources and varying levels of PAHs in different homes figure into an analysis of damage; not causation or liability. Based on the record before us, we cannot say that finding is manifestly wrong, and we decline to find it lies outside the trial court’s considerable discretion. Accordingly, we find no legal error in the trial court’s finding that class certification was proper based on the common cause requirement.
 

 ASSIGNMENTS THREE AND FOUR
 

 In these assignments of error defendants argue that the trial court legally erred by including both past and present property owners; that the trial court’s proposed class is overboard; and, that it is not ascertainable, in violation of the requirements of La.Code Civ.P. art. 591(A)(5). The trial court set forth the class definition as follows:
 

 [T]he class definition shall be limited to property owners who owned the property at the time the damage occurred. As for the time period which will apply to this class definition, the evidence presented by plaintiffs’ shows that the defendants began using creosote and pentachlorophenol and discarding the remnant waste waters into the Chatlin Lake Canal approximately in 1944. Further, the evidence reflects that hazardous activities such as this, including the potential failure to remediate damage caused by the failure to properly dispose of hazardous chemicals, has continued throughout the facility’s operation as recently as present day. Therefore, the class definition shall consist of property owners who owned property within the class area at the time the property was damaged during the years of 1944 through present.
 

 
 *1117
 
 As noted above, the trial court defined the class as consisting of |, /‘property owners who owned property within the class area at the time the property was damaged during the years of 1944 through present.” We agree with plaintiffs that this class is easily ascertainable from the records of property owners located in the Rapides Parish courthouse.
 

 However, defendants argue that if past and present owners of the same piece of property are class members they will have conflicting interests which will compound the individual issues already existing. We agree with defendants that inclusion of past and present owners of a piece of property within the 1.5 mile radius around the facility presents conflicts of interest among the class members and class counsel and presents issues regarding prescription. We are unsure how any former owner, having sold his or her property without regard to or knowledge of the potential contamination, could feasibly claim harm.
 

 Nevertheless, as we found in
 
 Duhé,
 
 779 So.2d at 1080, “because of a trial court’s authority to redefine the class ... appellate courts often allow certification despite a finding that the definition is inadequate for one reason or another.” The trial court’s flexibility to define and redefine the class appears in the very language of La.Code Civ.P. art. 591(A)(5): “The class is or
 
 may
 
 be defined ...” (emphasis added). Thus, while we concede that the defendants have raised fair questions about this class definition, we will neither redefine it at this time, nor require the trial court, by way of remand, to do so. Rather, at this juncture, we will rely on the authority and discretion vested in the trial court to liberally make any and all necessary amendments as this matter progresses. Accordingly these assignments of error are without merit.
 

 J^ISSUE FIVE
 

 In this assignment of error, defendants rely on
 
 Ford,
 
 703 So.2d 542, to argue that attic dust contamination is a novel and untested theory of law and that no regulatory standards for attic dust exist, thus, class certification should be denied. They further argue that a class action is not the superior method of adjudication when members of a putative class declined to proceed as a class action and filed individual claims.
 

 The facts of this case are distinguishable from those in
 
 Ford.
 
 In
 
 Ford,
 
 the plaintiffs theorized that a “synergistic accumulation” of chemical releases from four different chemical plants injured them. The supreme court found that “this case is inappropriate for certification because the ‘synergy’ theory is a novel and untested theory of law, making it impossible for plaintiffs to prove that the class action procedure is appropriate.”
 
 Id.
 
 at 550. The court went on to find that:
 

 [I]t is unclear whether plaintiffs can prove that the emissions of the four defendant companies (or the two remaining defendant companies) indeed do combine “synergistically” to cause damage to their surrounding neighbors. Thus, it is unclear what common issues of law or fact will exist in such a case and thus it is unproven whether trying the case as a class action would be superior to trying the case in several individual or consolidated actions.
 

 Id.
 
 at 551. Plaintiffs here advance no such novel theory. Toxic chemical emissions from plant activity, whether long-term or from a single accident, have been the subject of numerous class action claims. Defendants further argue that attic dust testing is not subject to regulatory testing. Plaintiffs’ expert testified to the validity of attic dust sampling and further testified that the EPA has used attic dust testing.
 
 *1118
 
 Again, the factual findings of the trial court will not be disturbed absent manifest error. It found the plaintiffs’ experts credible regarding attic dust testing and 11ssampling for purposes of certifying the class. Defendants will have every opportunity at trial to convince the trier of fact that plaintiffs’ methodology is invalid or that plaintiffs’ expert is otherwise lacking in credibility.
 

 Finally, defendants argue that the trial court failed to consider that individual claims are the superior method of adjudication. Defendants note that in
 
 Paige v. Dura-Wood, LLC
 
 (Docket No. 214,913, pending in the Ninth Judicial District Court) over five hundred individual plaintiffs are pursuing these the same Defendants for personal injuries and property damages allegedly caused by defendants’ toxic facility emissions. While it is true that La.Code Civ.P. art. 591(B)(3) requires the trial court to consider litigation already pending, the article further requires consideration of various factors such as the ability of the class members to pursue claims on their own. As the supreme court pointed out in
 
 McCastle v. Rollins Environmental Services of LA., Inc.,
 
 456 So.2d 612, 619 (La.1984):
 

 The legislative policy underlying these causes of action operates to deter landowners’ activities which cause injury and unreasonable inconvenience to others, to cause those who have profited by the activities to disgorge unjust enrichment gained thereby, and to compensate victims injured or unreasonably inconvenienced. If the claims are not asserted in a class action it is evident that many will not be pursued, that the court may not see the true significance of claims or liability, and that the court will therefore be unable to give full realization to the substantive legislative policy.
 

 In this case the class potentially consists of approximately 4,700 landowners (many in low-income areas) many of whom undoubtedly would not pursue the claims on their own. Accordingly, we cannot say that the trial court abused its discretion in certifying the class.
 

 CONCLUSION
 

 The trial court applied the correct legal standard in deciding to certify j 14this class. Its written reasons clearly establish thorough consideration of the factors set forth in La.Code Civ.P. art. 591. We find no manifest errors with regard to the trial court’s factual findings. We, therefore, decline to perform a de novo review.
 

 We are left, then, to consider whether the trial court abused is discretion in ultimately certifying this class. The defendants have properly pointed out a number of potential problems with the class as it has been defined. First, the extremely long period of time over which the plaintiffs may claim harm is unprecedented. Second, while there is only one plant at issue, there have been multiple owners of that plant from which the plaintiffs seek recovery. Third, the fact that the trial court has included both past and current land owners will likely result in conflicts among the very same class members whose interest should be aligned.
 

 The trial court’s decisions regarding definition of the class and its overall decision to certify the class are not chiseled in stone. On the contrary, the trial court can, at any time before a decision on the merits of the common issues, alter the class, redefine the class, or even recall the class certification all together. Our supreme court has found it wise to maintain a class certification even if later developments demonstrate that such maintenance was error.
 
 See Brooks,
 
 13 So.3d 546.
 

 The trial court’s judgment certifying the class is hereby affirmed. All costs of this appeal are assessed against the defen
 
 *1119
 
 dants-appellants, Roy 0. Martin Lumber Company and Beazer East, Inc.
 

 AFFIRMED.
 

 [1]
 

 . The suit was originally filed in 2003 in Ascension Parish but was transferred to the Ninth Judicial District Court in Rapides Parish pursuant to a judgment rendered in April 2005, granting Martin and Beazer’s exception
 
 *1111
 
 of improper venue. Plaintiffs “Amending and Superseding Petition” was filed in August 2007. The original suit is not in the record before us.
 

 [2]
 

 . Railworks Wood Products, Inc. has not been sued.
 

 [3]
 

 . Article 591(A) provides:
 

 One or more members of a class may sue or be sued as representative parties on behalf of all, only if:
 

 (1) The class is so numerous that joinder of all members is impracticable.
 

 (2) There are questions of law or fact common to the class.
 

 (3) The claims or defenses of the representative parties are typical of the claims or defenses of the class.
 

 (4) The representative parties will fairly and adequately protect the interest of the class.
 

 (5) The class is or may be defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for purposes of the conclusiveness of any judgment that may be rendered in the case.